WHEELER TRANSFER AND STORAGE COMPANY, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

*September 15—October 11, 1932.*

For the appellant there was a brief by *Hayes, Coleman, McCauley & Hayes,* attorneys, and *W. A. Hayes* of counsel, all of Milwaukee, and oral argument by *W. A. Hayes.*

*D. K. Allen* of Oshkosh, for the respondent.

FRITZ, J.  This action was brought to recover for damage to plaintiff's truck as the result of a collision with one of defendant's trains on June 5, 1930, at a grade crossing in the city of Oshkosh.  On the trial of the cause a jury, by special verdict, found as to the train which was in the collision, that the engine bell was rung as required; that the train was running faster than fifteen miles an hour; that no suitable warning was given of the approach of the train; and that such excessive speed and such failure to give warning were causes of the collision.  The jury further found that the driver of the truck, Vincent Mrochinski, could not,

as he approached the track on which the collision occurred, have discovered the approach of the train in sufficient time to avoid the collision by the exercise of ordinary care on his part; and that while he was approaching that track he did not fail to exercise ordinary care to avoid a collision with any train thereon. After verdict the defendant, in connection with other motions, moved for judgment notwithstanding the verdict. The court denied that motion and ordered judgment on the verdict for plaintiff for the recovery of damages as assessed by the jury. The principal question on this appeal is whether defendant was entitled to have the trial court grant its motion for judgment notwithstanding the verdict, for the reason that the evidence established, without room for a finding to the contrary, that Mrochinski failed to exercise ordinary care to avoid the collision, and to discover the approaching train in time to avoid the collision; and that such failures on his part were causes of the collision, and consequently, as a matter of law, defeated plaintiff's right to recover.

Undisputed evidence established that the collision occurred while Mrochinski was driving the truck with an eight-ton load eastward on Universal drive, a roadway which is used for public travel, and which at grade crosses the main track of defendant's railway and also a switch track, which is fourteen feet east of the main track. Twenty-six feet west of the center of that main track, Universal drive intersects the east curb of Harrison street, which is sixty-six feet wide and extends in a north and south direction parallel to defendant's main track. That track extends southward from Universal drive in a straight line and on a level grade to and beyond New York avenue, which is 2,050 feet south of Universal drive. Looking south from Universal drive along the main track, the view is unobstructed for over 2,050 feet, and that is likewise true along Harrison street.

In the area bounded by the main track on the east, Harrison street on the west, New York avenue on the south, and Universal drive on the north, there are thirty-eight poles, two street signs, five railroad signs, two flashers, two post signs, and a railroad gatehouse with the boxes around it, which somewhat interfere with the view southward along the main track from some points on Universal drive between the center line of Harrison street and that track. However, a photograph and a map made by Floyd Atherton, who had been employed in the city engineer's office and was now a law-school graduate working in the office of plaintiff's attorney, show that it is improbable that those objects and structures would prevent more than momentarily, at but one point, observation, by a person traveling on Universal drive between Harrison street and the track, of a north-bound train approaching anywhere within 2,050 feet. At all events, Mrochinski testified only that those objects and structures would hide the view of a north-bound train, approaching within those 2,050 feet, at but one place along Universal drive, which was fifteen to eighteen feet from that track. On the other hand, Atherton, who had re-inspected the premises at the direction of plaintiff's attorney, when asked by him, "Now, is there any place on Universal drive where if you look south in the direction of the Soo-line track that your view is obstructed by these obstructions you have named," answered, "About twenty-five feet from the center of the rails if you were on Universal drive driving up that driveway and looked to the south there would be an obstruction clear down to New York avenue; the bars form a regular fence along there, and when you get on that angle you can't see a thing."

Mrochinski had used that crossing on prior occasions and knew of the location of the tracks and traffic conditions. Giving his testimony the most favorable construction to

plaintiff that it admits of, it establishes the following: He had entered upon Universal drive by making a left-hand turn off Harrison street, on which he had been approaching from the north, and had come to a stop before making that turn. As he was about to make that turn he looked to the south to see if any train was coming. He says that there was none in sight, and that he then started up his truck and, glancing the other way, saw a switch engine north of Universal drive going south on the switch track. He drove eastward at the rate of two or three miles per hour and, because he figured that the switch engine was going to cross the drive, he watched it come along until it stopped north of the drive, 100 feet away from him, and then started to go the other way. He immediately glanced southward and saw the passenger train coming about 570 feet away, at a rate of speed which he estimated at thirty miles per hour. At that time the front of the frame and bumper of the truck were over the rail of the main track, but none of the wheels were as yet on the track. There was an upward slope toward the track and, as he saw the approaching train, he stopped the truck because he thought that he could not get over the track. He shifted gears into reverse to clear the track by backing two or three feet, but his motor stopped, and he could not get it started again to back off the track before the train struck the front end of the truck.

Thus it appears without dispute that plaintiff's truck was driven upon the main track without any observation being made by Mrochinski for an approaching train on that track during the time that he drove at two or three miles per hour, from where he turned into Universal drive at Harrison street until the front of the truck had entered upon that track to the extent of at least two feet. In other words, as the distance along Universal drive, from the center of Harrison street to the main track, is fifty-nine feet, he proceeded

all of that distance without looking to see whether there was any train approaching on the first track, until it was too late because the truck had already entered the zone of danger. As, by looking to the south at any time while he traveled those last fifty-nine feet, excepting at but one place either fifteen or eighteen feet from the west rail (according to Mrochinski's testimony), or twenty-five feet from the center of the west track (according to Atherton's testimony), Mrochinski could have observed the train approaching on that track from the south during all of the last 2,000 feet, his failure to make any such observation and to see that train, until it was too late, clearly constituted such contributory negligence on his part as to bar recovery from defendant. *Waitkus v. Chicago & N. W. R. Co.* 204 Wis. 566, 236 N. W. 531, 237 N. W. 259; *Swanson v. Lake Superior T. & T. R. Co.* 200 Wis. 491, 228 N. W. 257; *Roth v. Chicago, M. & St. P. R. Co.* 185 Wis. 580, 201 N. W. 810; *Twist v. Minneapolis, St. P. & S. S. M. R. Co.* 178 Wis. 513, 190 N. W. 449. An observation to the south, while he drove the last fifteen feet before entering the zone of danger, would have informed him of the approach of the train, which, if it was going at thirty miles per hour, while he was driving at three miles per hour, could not have been over 200 feet away when he was fifteen feet from the track. Approaching the main track as he was at but three miles per hour, with the truck fully under control, he could readily have come to a stop within the last fifteen feet before entering upon the track.

Mrochinski's neglect to observe the train approaching on the main track, which was the first track that he was about to cross, is not excused by his continuing observation of the switch engine on the further track. That engine and its movements did not afford occasion for such irresistible diversion of attention as to be sufficient to excuse his failure

to look for an approaching train along the first track, which he was about to cross. *Guhl v. Whitcomb,* 109 Wis. 69, 74, 85 N. W. 142; *Nolan v. Milwaukee, L. S. & W. R. Co.* 91 Wis. 16, 64 N. W. 319; *White v. Minneapolis, St. P. & S. S. M. R. Co.* 147 Wis. 141, 149, 133 N. W. 148. The exercise of due care on his part necessitated his observing traffic conditions on the main track as well as on the switch track. Manifestly, as a matter of law, he could not, in the exercise of due care, confine his observations to the switch engine on the second track to the complete exclusion of any timely attempt to ascertain whether the first track could be crossed in safety. It was certainly as important to look first for any approaching train on the main track before entering that first zone of danger as it was to watch the slowly-moving switch engine on the further track. Particularly so, inasmuch as Mrochinski knew of the relative location and use of the tracks which he was about to cross. At all events, under the undisputed facts and circumstances, the necessity for observing the movements of that switch engine did not relieve Mrochinski from exercising ordinary care to also observe traffic conditions along the main track in time to realize that, because of the proximity and speed of the approaching train, he could not drive across that main track in safety. It follows that defendant's motion for judgment notwithstanding the verdict should have been granted and that the complaint should have been dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.