Szewczyk, Respondent, vs. Milwaukee Electric Railway & Light Company, Appellant.

*March 8—April 11, 1933.*

For the appellant there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*

For the respondent there was a brief by *Barry & Rosenheimer* of Milwaukee, and oral argument by *John S. Barry.*

Fritz, J.    Defendant appeals from a judgment for the recovery by plaintiff of damages sustained by him in a col-

lision between an automobile, which he was operating, and a. street car operated by defendant. The collision occurred while plaintiff was backing westward on a private driveway to get out on a public highway, running north and south. Defendant's street-car track, which was wholly within the highway, ran parallel thereto, about forty-four feet west of the east line thereof. The street car approached from the north. In the special verdict upon which judgment was ordered for plaintiff, the jury found that the motorman's negligence in respect to speed, lookout, and control caused plaintiff's injury; and that there was no negligence on plaintiff's part in respect to lookout or control which contributed to cause his injury. The evidence admits of the jury's findings as to the motorman's negligence.

However, a review of the evidence also discloses that plaintiff was guilty of contributory negligence in respect to lookout, as a matter of law. In considering the evidence involved in reaching that determination, the plaintiff is of course entitled to the most favorable construction and inferences which the credible evidence, under any reasonable view, admits of in support of his contentions, and the verdict of the jury in his favor. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741. Thus construed, the evidence and the inferences thereunder are to the following effect, so far as the facts, which are material on the question of plaintiff's contributory negligence in respect to lookout, are concerned: The collision occurred at about 1 p.m. on a clear sunshiny day. Plaintiff claims that as he was backing westward toward the track, his view, from his position in the driver's seat, to the north for an approaching car, was obstructed by a patch of high weeds, when he reached a point twenty-four feet east of the east rail; and that, as he backed westward from that point, there was no opportunity for him to observe a car approaching from the north until after the

rear of his automobile had entered upon the tracks. In other words, the last point from which plaintiff, sitting in the driver's seat, could see an approaching car, before his automobile entered the zone of danger, was when he was twenty-four feet east of the track. However, before he reached that point, which was twenty-four feet east of the track, he had an unobstructed view to the north while he traversed, at five to seven miles per hour, the fifty-four feet immediately to the east of the first twenty-four feet east of the track. At all times, while traversing those fifty-four feet, his view to the north, along the straight stretch of defendant's track, and the public highway, was unobstructed for over 600 feet north of the private driveway; and, if plaintiff had exercised due care in looking to the north while traversing those fifty-four feet, he could readily have observed any street car which was approaching within that distance of 600 feet.

However, although plaintiff testified that he looked to the north, he also testified that he never saw the street car until the rear wheels of his automobile (which was twelve feet ten inches long, over all) were between the two rails of the track. He could not say how far away the street car then was, but he figured it might have been about 300 feet. He still continued to move backward, at six to seven miles per hour, and had traveled "possibly four feet or more, from the time he first saw the street car until it collided, striking the middle of the side of his automobile." He had continued the backward movement of his automobile from the point seventy-eight feet east of the track until the collision occurred. Upon seeing the street car he fed more gasoline, but his wheels spun around somewhat before taking hold. He testified that he could not say what the rate of speed of the street car was, but that it was coming "awful fast." On the other hand, the motorman testified, without being con-

tradicted, that the street car was traveling between twenty and twenty-five miles per hour, and that a street car does not travel thirty-five to forty miles per hour along there.

Manifestly, if it be assumed that plaintiff was backing at but five miles per hour—the slowest rate of speed to which he testified,—and that the street car was approaching at as high a speed as even forty miles per hour, the street car in the same period of time could have traveled no more than eight times as far as plaintiff moved. That being true, when plaintiff had his last opportunity, at the point twenty-four feet east of the track and before entering the zone of danger, to observe the approaching street car, it could not have been more than eight times twenty-four feet, or a total of 192 feet, north of the private driveway. Consequently, when plaintiff was twenty-four feet east of the rail, where he had his last opportunity for observation, the street car, then not over 192 feet to the north, was plainly within his view. He could readily then have observed it, and the speed at which it was approaching, if he had been exercising due care; and he could, likewise, during all the time that he was traversing the fifty-four feet east of the west twenty-four feet of the private driveway, have observed that car and its speed, while it traveled from a point 600 feet to the point 192 feet north of the driveway. As he could readily have controlled the movements of his automobile so as to avoid entering the pathway of the approaching car, if he had been aware of its approach, as he ought to and presumably would have been before entering the zone of danger but for his failure to exercise due care in making his observations, his failure in that respect constitutes such contributory negligence as to defeat his right to recover from the defendant. As this court said in *McClellan v. Chippewa Valley E. R. Co.* 110 Wis. 326, 85 N. W. 1018:

"If the car was actually in sight when he entered on the track, then it was his duty to see it, and he was negligent if

he did not see it, notwithstanding he testifies that he looked and did not see it."

Likewise in point are the principles stated in the following quotations:

"For a person to declare he performed such duty and yet failed to perceive an approaching train or car in case of there being such in plain sight or hearing, does not raise a question of fact for decision by a jury. Such person must be presumed to either not have performed such duty or to have done so and yet heedlessly submitted himself to the danger." *White v. Minneapolis, St. P. & S. S. M. R. Co.* 147 Wis. 141, 148, 133 N. W. 148.

"Courts will not deem credible the testimony of a plaintiff that he did look and listen, but did not see or hear that which the physical facts and circumstances demonstrate must have been apparent." (Citing many cases.) *Schroeder v. Wis. Cent. R. Co.* 117 Wis. 33, 93 N. W. 837.

"Evidence that he performed the duty of looking but did not see the coming car does not raise a question of fact for a jury to determine." *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 85 N. W. 1036.

See, also, *Bertrand v. Milwaukee E. R. & L. Co.* 156 Wis. 639, 146 N. W. 915; *Spence v. Milwaukee E. R. & L. Co.* 163 Wis. 120, 157 N. W. 517; *Gulesserian v. Madison Rys. Co.* 172 Wis. 400, 179 N. W. 573; *Waitkus v. Chicago & N. W. R. Co.* 204 Wis. 566, 236 N. W. 531, 237 N. W. 259; *Wheeler T. & S. Co. v. Minneapolis, St. P. & S. S. M. R. Co.* 209 Wis. 156, 244 N. W. 569.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.