BAHLERT, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*November 15—December 13, 1921.*

*Railroads: Accident at grade crossing: Failure to ring bell: Care required of traveler: Failure to look when within or near danger zone: Excuse.*

1. It is the duty of one approaching a railroad track to look and listen when approaching the zone of danger and at the last practicable or reasonable opportunity; and it was not sufficient for one driving an automobile about twelve miles an hour to look when from 600 to 700 feet from the track, as he was not then within or near the danger zone.
2. Where an automobile driver, traveling a road which intersected a railroad track at an angle of 120 degrees, was familiar with the crossing, had normal hearing and sight, and had an unobstructed view for the last 100 feet, he was guilty of more than a slight want of ordinary care in failing to look for trains until he was only twelve or fifteen feet from the track and unable to stop before reaching it. *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, distinguished.
3. No bell having been rung, a slight want of ordinary care on plaintiff's part does not defeat recovery, and the strict rule of ordinary care is correspondingly relaxed; but such relaxation does not abrogate the duty to look and listen for trains. Failure to look and listen within the zone where the duty exists, without sufficient excuse, constitutes more than a slight want of ordinary care.
4. To abrogate the rule as to the duty to look and listen at railroad crossings, the excuse for diversion of attention must be substantial.

APPEAL from a judgment of the circuit court for Marinette county: W. B. QUINLAN, Circuit Judge. *Reversed.*

Action to recover damages sustained by plaintiff in a collision with defendant's train. Hall avenue, Marinette, runs in an easterly and westerly direction and is intersected by

the track of the *Chicago, Milwaukee & St. Paul Railway Company,* which runs from northwest to southeast, forming an angle of 120 degrees on the northeast side of the highway and an angle of 60 degrees on the southeast. On September 4, 1917, at about 3:30 p. m., defendant's train, consisting of an engine and fourteen cars, approached the crossing from the northwest at a rate of speed of from twelve to fifteen miles an hour. The plaintiff, *Hugh Bahlert,* approached the crossing from the east at a rate of speed of about twelve miles an hour. When about 100 feet east of the crossing he passed another car which turned out and slowed up for him and then came to a stop. After passing the car *Bahlert* continued toward the track, and when about twelve or fifteen feet from it he first saw the train. He set his brake and turned his wheel to the right, but ran onto the track and was struck by the train.

The jury found (1) that the engine bell was not rung continuously from the time the train was within twenty rods of Hall avenue crossing until the time of collision; (2) that such failure to ring said engine bell was a proximate cause of the injuries to plaintiff; (3) that defendant's train was moving at a speed faster than twelve miles an hour while approaching within twenty rods of Hall avenue crossing; (4) that such fact was a proximate cause of the injuries to plaintiff; (5) that plaintiff in driving his automobile toward and upon the crossing was not guilty of more than a slight want of ordinary care proximately contributing to his injuries; and (6) damages in the sum of $10,000.

The trial court gave to defendant the option to accept a judgment against it for $7,000 and costs, or, in case it was not accepted, it gave plaintiff the option to accept judgment for $6,000 and costs or a new trial. Defendant elected not to exercise its option and plaintiff elected to accept judgment for $6,000. From a judgment entered accordingly the defendant appealed.

For the appellant there was a brief by *H. J. Killilea* and

*Rodger M. Trump,* both of Milwaukee, and *Martineau & Martineau* of Marinette, and oral argument by *Mr. Trump.*

For the respondent there was a brief by *Martin, Martin & Martin,* and oral argument by *Gerald F. Clifford,* all of Green Bay.

VINJE, J.   The vital question raised by the appeal is whether plaintiff was guilty of more than a slight want of ordinary care in driving his automobile so close to the track without looking for a train.   The testimony is that he looked when from 600 to 700 feet from the track and that he drove at a rate of speed of about twelve miles per hour, and did not look again till within twelve or fifteen feet of the track, when it was too late to avoid the collision.   The first observation was obviously too early to be relied upon alone, especially in view of his slow rate of speed.   He was then not within or near the zone of danger and would not be for a considerable time.   The duty to look and listen is when approaching the zone of danger and at the last practicable or reasonable opportunity.   So his first observation cannot be relied upon to show compliance with his duty to look and listen.   His second and last observation was too late.   He was familiar with the crossing; had normal hearing and sight, and within the last one hundred feet he had an unobstructed view of the track and train for a long distance. There was evidence that some trees obstructed his view, but the nearest tree to the track was twenty feet from the right of way and the road made an angle of 120 degrees with the track on the right-hand side—on which side plaintiff sat, his car having a right-hand drive,—so that in order to look for the train he could look almost straight ahead, and the tree mentioned did not obstruct his view of the train at all after he came near the zone of danger when it became his duty to look.

There is also claim made that his view was obstructed and his attention diverted by a Ford car with top down that he

passed about one hundred feet from the track. He estimated the distance at seventy-five feet, but said it was near the center of Van Cleve avenue. Measurements showed the distance to be 105 feet. He said the Ford car slowed up and stopped at the place indicated by him. If so, and there is nothing to dispute it, he had nothing to interfere with his looking for a train after he passed the Ford car a distance of from ninety to one hundred feet. The car back of him could not divert his attention. Indeed, it would seem that its stopping near a railroad crossing would constitute a warning to him to stop also, at least to look for a train. And had he looked during the first sixty feet after passing the car he could have seen the train in time to avoid it.

Plaintiff relies upon the case of *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 169 N. W. 570. But in that case there were obstructions to the view of the train for a long distance back from the track, and it was only during the last thirty feet that the traveler had an unobstructed view of the train, and it was said that there could be no assumption that the deceased neither looked nor listened for the train. Here we have plaintiff's own testimony that he neither looked nor listened except at two points, one too early and the other too late.

It is true that in cases of this kind where a slight want of ordinary care on plaintiff's part does not defeat recovery, the strict rule of ordinary care is correspondingly relaxed as stated in the *Gordon Case,* but that relaxation does not abrogate the duty to look and listen for a train at a railroad crossing. And when it appears, as here, that there is a failure to look and listen within the zone where the duty exists, such failure, unless a sufficient excuse therefor is shown, constitutes more than a slight want of ordinary care. *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148; *Puhr v. C. & N. W. R. Co.* 171 Wis. 154, 176 N. W. 767.

We reach the conclusion that from the undisputed evidence plaintiff was guilty of more than a slight want of ordinary care and hence cannot recover damages. In arriving

at such conclusion we are not unmindful of the weight that should be given a verdict approved by the trial court. Were the evidence as to the main facts conflicting, the jury's finding would ordinarily be conclusive. But here there is no conflict in the evidence. The only question is what conclusion should be drawn from it as to the degree of contributory negligence. To allow the verdict to stand would be to permit the most flimsy excuse for diversion of attention to abrogate the rule as to duty to look and listen. Such an excuse must be substantial. *White v. M., St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148. As before suggested, the alleged excuse, namely, the stopping of the other car before it reached the railroad crossing, was more in the nature of a warning than an excuse.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the action upon the merits.