566

WAITKUS, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*February 12—May 12, 1931.*

*John F. Baker* of Milwaukee, for the appellant.
*Robert V. Baker* of Kenosha, for the respondent.

OWEN, J.   The husband of the plaintiff was killed on the 16th day of April, 1929, while crossing defendant's tracks on a public highway in the city of Kenosha.   This action is brought to recover damages sustained by the plaintiff by reason of such death.   There was a special verdict of the jury upon which judgment was rendered in favor of the plaintiff.   The appellant assigns numerous errors, among which is that a nonsuit should have been granted or, in lieu thereof, a verdict directed in favor of the defendant because of the contributory negligence of the deceased.   As we decide the question raised upon this assignment of error in favor of the defendant, it will be unnecessary for us to consider other questions presented and argued.

The law imposes upon the traveler on a highway crossing a railroad track the duty of exercising his senses for the purpose of ascertaining whether he may cross the track in safety.   The presence of the railroad track itself is a warning of danger.   Because in order to discharge their public functions railroad trains must be operated at a high rate of speed, because they are maintained upon a fixed track, and because owing to physical laws they cannot be stopped quickly, the law imposes upon the traveler the duty of exercising his senses of sight and hearing in order to avoid the collision which is certain to result if the traveler and the train reach the same spot at the same moment of time. The condemned man goes to the gallows with certain trepidation, yet he goes to no more certain death than does he who places himself in front of an on-rushing train.   Since a train may be coming at any moment, the entrance upon a railroad track is or should be a matter of genuine solicitude.

As the operation of the train cannot be accommodated to the movements of the traveler, the traveler must yield to the movements of the train. Therefore it has come to be as well settled in the jurisprudence of this country that the traveler must exercise his senses to discover the approach of a train when he attempts to cross a railroad track as that a contract requires a consideration, and probably with greater reason. This proposition has recently found virile and distinguished expression by the pen of Mr. Justice HOLMES in *Baltimore & O. R. Co. v. Goodman,* 275 U. S. 66, 48 Sup. Ct. 24, in the following language:

"When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near, he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal and takes no further precaution, he does so at his own risk. If at the last moment Goodman found himself in an emergency it was his own fault that he did not reduce his speed earlier or come to a stop. It is true as said in *Flannelly v. Delaware & Hudson Co.* 225 U. S. 597, 603, 32 Sup. Ct. 783, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the courts. See *Southern Pacific Co. v. Berkshire,* 254 U. S. 415, 417, 419, 41 Sup. Ct. 162."

It is conceded that the crossing in question was a dangerous one. The deceased was going from west to east. The tracks ran north and south. There were three tracks. The first track approached by the deceased was a service track, upon which there was located a box car in close proximity to the street, which obscured his view to the north. The next was a main track upon which north-bound trains were

operated. The next and the one upon which the deceased met his death was the one upon which south-bound trains were operated. The train which struck the deceased was going south at a rate of speed estimated between forty and fifty miles per hour. The deceased was riding in a Ford automobile. According to the testimony of an eye-witness, he first turned south on a traveled track adjacent to the west side of the right of way. After proceeding a short distance in that direction he backed his car back on the street and again headed it in an easterly direction. He paused momentarily after backing his car and then proceeded at a uniform rate of speed of between six to eight miles an hour until he was struck by the oncoming train. When he was twenty-four feet from the center line of the track upon which he was struck, he could have seen 600 feet to the north, the direction from which the train was coming. At a distance of twenty-three feet he could have seen 1,300 feet, and at a distance of twenty-two feet he could have seen a distance of a half a mile or more. The clearance between the front of the automobile in which the deceased was riding and the overhang of the train was somewhat less, the exact distance not appearing in the evidence. But that is not very material, if indeed it is material at all.

It was the duty of the deceased to have his automobile under such control that he could have brought it to a stop before he was precipitated into a situation which meant his instant death. It is not too much to say that the actual physical situation was such as to have enabled him to stop his automobile, going at the rate of six or eight miles an hour, after he would have discovered the train had he looked. If this be not true, then he was derelict in the performance of the duty which the law imposes upon him in operating his automobile at a rate of speed which was bound to precipitate him into this zone of danger. The danger which the deceased should have anticipated was a very real one, and the

duty which the law imposed upon him was absolute. He must use his senses for his own assurance that he may venture upon the track with safety. He is not bound to see trains coming that are not within his line of vision. He is not required to look through dense foliage or embankments. In such cases he must rely upon his sense of hearing and upon the performance of such duty as the law imposes upon the railroad company to sound the approach of its trains under such circumstances. However, where he can see it is his duty to see, and this duty is not suspended because of difficulties that do not amount to impossibilities. *Roth v. C., M. & St. P. R. Co.* 185 Wis. 580, 201 N. W. 810; *Baltimore & O. R. Co. v. Goodman,* 275 U. S. 66, 48 Sup. Ct. 24. His duty is not to exercise the same care that mankind generally do. His duty is to meet the standard of care required by the law. He cannot substitute for this standard a course of conduct that is no more negligent than that pursued by mankind generally. His duty is like that of employers to furnish a safe place to work, or to guard machinery, a duty which they do not necessarily discharge by doing as employers generally do.

It is urged that the plaintiff has the benefit of the presumption that her decedent did his duty and observed the precautions which the law prescribes. That is true, but that presumption disappears when it becomes apparent that had he looked he would have discovered the train and could have prevented the collision had his automobile been under proper control.

Another circumstance is relied on to relieve the conduct of the deceased from contributory negligence as a matter of law. It appears that the railroad company maintained a flagman at this crossing during the daytime, but that he was not stationed there after 6 o'clock p. m. This accident happened at 6:20 o'clock p. m., when the flagman had left in accordance with established custom. There is some proof

that the deceased had traveled over this crossing in day-times when the flagman was present. There is no proof that he traveled over the crossing after 6 o'clock p. m. It is said that the deceased might not have known the custom of withdrawing the flagman at 6 o'clock, and that in proceeding across these tracks he might have done so in reliance upon the presence of the flagman and his warning of approaching trains. The bearing which the customary maintenance of a flagman at a crossing has upon the contributory negligence of a traveler upon a highway, who relies upon the flagman's warning in proceeding across the railway tracks, was considered in *Gundlach v. C. & N. W. R. Co.* 172 Wis. 438, 179 N. W. 577, 985. The doctrine of that case is to the effect that the customary maintenance of a flagman at a crossing, such custom being known by the traveler, relieves the traveler of the absolute duty which the law imposes upon him to exercise his senses to discover the approach of a train, and that when that circumstance appears his duty is that of exercising ordinary care. In such cases the railroad company shares with the traveler the absolute duty otherwise devolving on the traveler. However, before the duty of the traveler may be thus minimized, the circumstances must be such that the jury can find that the traveler placed some reliance upon the usual maintenance of the flagman.

In this case no flagman was maintained at this crossing after 6 o'clock p. m. If the deceased knew what the custom really was, he could place no reliance upon it, because he was charged with knowledge that there was no flagman there at the time of the accident. However, it is argued that he did know that a flagman was customarily maintained in the daytime. This inference may be permissible from testimony to the effect that he had crossed this crossing in the daytime when the flagman was present. But upon the evidence in this case would the jury be permitted to find that he did

place any reliance upon this custom at the time in question, and, if so, could they be permitted to find that he was justified in so relying? In order to justify such reliance it is necessary to permit the deceased to assume a custom which did not in fact obtain. It would permit him to assume that because a flagman was maintained at this crossing at certain times of the day he was maintained there every hour of the day. This might be permissible if such be the general custom. There is no evidence to show that where a flagman is maintained during the daytime when the traffic is heavy he is generally so maintained during the night when there is little or no traffic. In the absence of such a custom there was no reasonable basis for such an inference if it was in fact indulged and relied upon. When the usual maintenance of the flagman at the time of the accident is clearly known by the traveler it does not relieve him from the exercise of all care. It merely mitigates the rigor of the duty which the law imposes upon him. But where the custom upon which he relies does not exist, we think it cannot be assumed; and the deceased had no right to rely upon the presence of the flagman at the time of the accident, if in fact he did rely thereon.

The respondent contends that the doctrine of *Gordon v. Ill. Cent. R. Co.* 168 Wis. 244, 169 N. W. 570, is applicable to this situation, and that as the jury in this case found that there was no want of ordinary care on the part of the deceased, it follows that the jury would find, and the court must so assume, that he was not guilty of more than a slight want of ordinary care. While it is true that under the facts in the *Gordon Case* a finding of the jury that the conduct of the plaintiff did not amount to more than a slight want of ordinary care was sustained, the facts in that case were peculiar, and that doctrine has never since been applied to a crossing accident. See cases cited in *Dax v. C., M. & St. P. R. Co.* 185 Wis. 432, 434, 201 N. W. 736. It has always

been held that a failure to look and listen amounts to more than a slight want of ordinary care. It is difficult to reconcile the holding in the *Gordon Case* with the duty devolving on travelers approaching a railway track. The doctrine of the *Gordon Case* is of doubtful soundness. It was applied in that case in an effort to give some recognition to the statute which provides that a slight want of ordinary care shall not prevent a recovery for injuries sustained by reason of crossing accidents. Since that time, however, we have consistently held that a failure to look or listen cannot be treated as a slight want of ordinary care. Situations where the doctrine of the *Gordon Case* can be applied will necessarily be infrequent, but certain it is that a failure on the part of a traveler to exercise his senses of sight and hearing to discover the approach of a train cannot be regarded merely as a slight want of ordinary care except under most peculiar circumstances. In that case the view of the traveler was for the most part intermittently obstructed. As already stated, whether that fact constituted a sound basis for the decision in that case may be doubted; certainly it cannot be applied in this case. Because the deceased was clearly guilty of contributory negligence the judgment cannot stand.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

WICKHEM, J. (*dissenting*). The obligation of the deceased was to exercise ordinary care for his own safety. It is held in this state as a matter of law that this obligation is not discharged unless a person approaching the tracks uses the senses of sight and hearing to discover the presence of an approaching train. In my judgment this creates no new or artificial standard of care, as do safety rules or laws, but is based on the proposition that where the evidence is undisputed and the inferences point so inevitably to the fact of negligence that reasonable minds could not differ, there is

no jury question. It is true that there are some situations in which, due to the fact that the view is unobstructed for a considerable distance before the track, it may be concluded from the physical facts alone that the person approaching the tracks did not look or listen, or, if he did, that he did not see what he clearly could and should have seen, or that he disregarded what he saw and proceeded without proper regard for his own safety. In this case, however, the crossing at which the deceased met his death was, by the act of the defendant, obstructed to a point where his car, going at the rate of eight or ten miles per hour, was somewhat less than two seconds from the track. There is no evidence in the record, other than that disclosed by the physical facts, as to whether he did or did not look or listen, and while, if he had looked, he clearly must have seen the train, I do not think it follows as an inevitable conclusion that he must, as a matter of law, have been guilty of more than a slight want of ordinary care. The time in which deceased was compelled to act after he saw the train was extremely short. The train was proceeding at a very high rate of speed—several times that permitted by law,—and might easily have thrown the deceased into confusion. Further than this, the train was moving on the second of two main tracks, each equally dangerous to the deceased, each calling for the exercise of precaution on his part, and somewhat dividing his attention. The burden of proof was upon the defendant to establish not only that the deceased was negligent, but that he was guilty of more than a slight want of ordinary care. The defendant is entitled to judgment as a matter of law if the inferences point inevitably to negligence on the part of deceased, and to go to the jury where the inferences are conflicting and reasonable minds might differ. Having the burden of proof, however, the defendant must be the loser as to any conclusions which are speculative. As I have heretofore stated, I do not believe the evidence points inevitably to negligence unless it can be said that in the physical situation

here presented a person crossing the tracks cannot be struck without being guilty of more than a slight want of ordinary care, and this I am unwilling to concede.

I believe the facts in this case are at least as favorable to the plaintiff as were those in the case of Gordon v. Ill. Cent. R. Co. 168 Wis. 244, 169 N. W. 570, and in view of the statute modifying the obligations of persons situated as was the deceased, I see no reason to depart from that decision.