CRANE, by guardian *ad litem,* Plaintiff and Respondent, vs. WEBER, by guardian *ad litem,* and another, Defendants and Appellants, CHICAGO & NORTHWESTERN RAILWAY COMPANY, Defendant and Respondent.

*March 9—April 11, 1933.*

For the appellants there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, attorneys, and *Frank F. Wheeler* of Appleton, guardian *ad litem* for Raymond Weber, and oral argument by *L. E. Hart* of Madison.

*John F. Baker* of Milwaukee, for the respondent Chicago & Northwestern Railway Company.

For the respondent Francis Crane there was a brief by *Sheridan, Evrard & Evrard* of Green Bay, and oral argument by *Philip Sheridan* and *R. E. Evrard*.

FOWLER, J. Many grounds for reversal are assigned by the appealing parties, but in the view we take of the case we need only consider the claim of the defendants Weber that the plaintiff was guilty of contributory negligence as a matter of law. The collision occurred before enactment by the legislature of the comparative negligence statute so that contributory negligence is an absolute defense to the action.

The undisputed evidence bearing upon the question of contributory negligence is as follows: Raymond stopped for the plaintiff at the latter's home, about a half block from the crossing where the collision occurred, and on the plaintiff's entering the car drove on toward the crossing. A wigwag signal was working as the car approached the crossing and both boys saw it in operation. The train was approaching from the right on the main railway track, which was the middle of three parallel tracks five feet apart. A switch track which the automobile crossed was located 145 feet from the main track. When crossing this switch track the plaintiff looked to his right but could see nothing because buildings shut off his view. These buildings extended to within 38 feet from the main railway track. At a point in the center of the street 75 feet from the center of the main track the view to the right on the main tracks extends 70 feet; at 50 feet, 152 feet; at 35 feet, 829 feet; at 25 feet, from one-half to three-quarters of a mile. The automobile was traveling midway between the center of the street and the curb, and a person in the automobile could not see quite so far down the tracks to the right as a person in the center of the street, as the street crossed the tracks at an angle at the right of about 140 degrees. After crossing the switch track the plaintiff did not look to the right again until he was thirty feet from the railway tracks when he saw the train forty feet away, "probably more" as he testified. The automobile was going twelve miles an hour, by the speedometer, according

to the plaintiff's testimony. At this rate it would take about one and a half seconds for the automobile to reach the track the train was on. Raymond testified that the automobile was new and had four-wheel brakes which were in good condition, and that he had "tried to determine how quick" he could stop it, and at fifteen miles per hour he could stop it in one or two feet. Raymond did not see the train until the automobile was on the track at the instant of the collision. When plaintiff saw the train it was manifest that Raymond had not seen it and did not see it. Raymond had before this slackened his speed and shifted gears according to the plaintiff, but was not slacking speed at this time and was going ahead with no indication of stopping. Upon Raymond's statement that he stopped and looked and saw nothing when fifteen feet from the first track, there was more necessity for the plaintiff to give warning than upon his own that he slackened his speed before the plaintiff saw the train but did not stop. Under these circumstances the plaintiff did nothing and said nothing. The automobile could have been stopped in two feet. There was ample time to give warning and enable Raymond to stop before reaching the first of the three railway tracks. Under any possible view of the evidence, and we must take the case as made by the evidence, it was necessary to give warning. The plaintiff was sixteen years of age, the age at which the law authorizes persons to drive automobiles and imputes to them such discretion and judgment as to make them competent to act properly in emergencies. We cannot escape the conclusion that under any possible view of the evidence the plaintiff was guilty of negligence as matter of law.

We so hold with due regard to the rule laid down in *Tomberlin v. Chicago, St. P., M. & O. R. Co.* 208 Wis. 30, 238 N. W. 287, 242 N. W. 677, 243 N. W. 208, and reaffirmed in *Paine v. Chicago, M. & St. P. R. Co.* 208 Wis.

423, 243 N. W. 205, which plaintiff's counsel contend makes the question of plaintiff's contributory negligence for the jury. The *Tomberlin Case* merely holds that a guest in an automobile is not held to the same degree of care as to look-out on approaching a railway track as is the driver, and that the question of the guest's contributory negligence is usually for the jury and was for the jury under the circumstances of that case. The *Paine Case* reversed the trial court for ruling that a guest in an automobile was held to the same degree of care as the driver, and that as the driver in that case was guilty of contributory negligence as matter of law under the rule of *Waitkus v. Chicago & N. W. R. Co.* 204 Wis. 566, 236 N. W. 531, 237 N. W. 259, the guest was also so guilty. In *Rock v. Sarazen,* 209 Wis. 126, 244 N. W. 577, we held that a guest riding beside the driver in the front seat of an automobile was guilty of contributory negligence as a matter of law upon her testimony that she looked and saw nothing when an automobile on an intersecting highway was in plain sight and told the driver to go ahead, that nothing was coming. This ruling negatives the idea that the question of a guest's contributory negligence is always for the jury. And there is nothing in the *Tomberlin* or *Paine Cases* to indicate that the guest's negligence on approaching a railroad track is always a jury question. In 1 Berry on Automobiles (6th ed.) sec. 675, a multitude of cases is cited and stated bearing on the point of the duty of occupants of automobiles on approaching railroad tracks. The section opens with the statement:

"It is the duty of one who is riding in an automobile as a passenger, when about to cross a railroad track, to look and listen for approaching trains, and to warn the chauffeur of the near approach of a train, and prevent him from attempting to cross the tracks close in front of the train, and a failure to perform this duty amounts to negligence."

Many of the cases hold that failure of such duty is negligence as a matter of law. Some, under the circumstances involved, hold that the question of his negligence is for the jury. No good purpose would be served by citing or stating these cases. Every case must stand upon its own facts. We are of opinion that under the facts here involved we must hold the plaintiff guilty, else the rule is mere gesture. It is futile to lay down a rule and then absolve performance of it in cases where juries plainly disregard it. Here the plaintiff was even more clearly negligent as matter of law than in *Rock v. Sarazen, supra.* Had he not looked at all for the approach of a train, after seeing the wigwag in operation, we would have to say, under the rule of the *Waitkus Case, supra,* that he was guilty of negligence as matter of law, if the duty to look is obligatory or to be of any force or effect. It is useless to look if one is not to heed what he sees and give warning when he sees a train so near that a collision is imminent if the automobile is not stopped. There is greater need for a guest to look out for trains at railroad crossings than for approaching traffic at highway intersections because trains cannot stop within short distances and cannot turn from their course of travel. The driver of an approaching automobile may by doing one or the other or both of these things be able to avoid injury from the host's negligence, but the engineer of a locomotive is powerless to do so.

*By the Court.*—The judgment of the circuit court is reversed, with directions to dismiss the complaint.

WICKHEM, J., dissents.