JOHNSON, Administrator, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*September 13—October 10, 1933.*

*John F. Baker* of Milwaukee, for the appellant.

For the respondent there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein*.

Rosenberry, C. J.   We shall not attempt to make a complete statement of facts but to state only such facts as are necessary in order to understand the contentions made by counsel on this appeal.

The accident occurred about a mile and a half north of the village of Padus in the county of Forest.   At that place the tracks of the railway run approximately north and south. State trunk highway 32, at the point in question, runs approximately north and south, parallel with the railway tracks.   At the time of the accident the McDonald Construction Company was engaged in rebuilding highway 32 and for that purpose had access to a gravel pit which was located east of the right of way of the defendant company.   In order to reach the gravel pit the trucks turned off from highway 32 to the east, traveled about forty rods, then crossed the tracks of the defendant company and proceeded on a short distance in a northerly and easterly direction to the gravel pit.   It was not a regular highway crossing, but an arrangement had been made between the state highway commission and the defendant company by which a crossing was installed for the purpose of reaching this gravel pit.

On the day in question Ronald Johnson was driving a Ford truck and engaged in hauling gravel from the gravel pit to highway 32 and thence south to the point where it was being dumped, about one and one-half miles.   He was returning with an unloaded truck, had turned off from highway 32 and had reached a point at or near the railroad right of way when he was seen by the driver of the engine.   At or about that time a man known as the barn boss, who did not testify upon the trial for the reason that he could not be found, was standing about one hundred feet from the railway track and thirty feet to the south of the road traveled by Ronald Johnson, and attempted to signal Johnson, apparently with the intention of warning him of the approach of the train.   The train was coming from the north

at a speed of approximately thirty miles an hour. As Ronald Johnson approached the tracks he turned his head to the right or south and looked over his shoulder in an effort to determine what the barn boss wanted. At that time his truck was traveling very slowly and according to all the evidence came to a stop. Shortly after the accident Ronald Johnson made a statement in which he said:

"As I turned my head I had run my truck across the crossing and I saw the barn boss waving and I stopped and started to back up and I turned my head and the train was within four feet of me. I thought my time had come."

The physical facts indicate quite strongly that the front end of the truck was hit by the pilot beam of the engine. He probably was in error as to backing up his truck, a quite natural circumstance in view of the nature of his injuries. The collision threw the front end of the truck around to the south, threw Ronald Johnson from the truck, and as a result of the blow he sustained injuries from which he died on the afternoon of the 11th of September, the day after he was struck.

It further appears that on approaching the tracks of the defendant company from the west at the point in question, Ronald Johnson had a clear view of the tracks to the north, the direction from which the train came, for several hundred feet. The principal contention made here is that Ronald Johnson, in failing to stop, look, and listen for the train before going upon the tracks of the defendant company, was guilty of contributory negligence as a matter of law. It is not seriously contended by the plaintiff that such would be the necessary result if the attention of Ronald Johnson, immediately prior to the happening of the accident, had not been diverted. Upon this proposition the trial court instructed the jury as follows:

"You are instructed that if the attention of Ronald Johnson was irresistibly diverted by the acts or conduct of the barn boss, while he was approaching the crossing in ques-

tion, and because of such diversion he failed to observe the oncoming train that led to the accident and injury to him, and you find that his conduct under the circumstances, having in mind the diversion of his attention, was that of the ordinary, prudent, and intelligent person under the same or similar circumstances, then Ronald Johnson was not negligent in a manner that produced the injury. If you are satisfied that Ronald Johnson, because of the conduct of the barn boss under the circumstances, irresistibly diverted from his attention to duty, and that the conduct of the barn boss under the circumstances would have caused the ordinary, prudent, intelligent person to act as did Ronald Johnson, and because thereof, irresistibly diverted his attention from the oncoming train, or caused him to stall his truck on the track, then he was not guilty of contributory negligence, contributing to his injuries."

The plaintiff argues in support of this proposition that Ronald Johnson was guilty of no more than a slight want of ordinary care and cites *Kanass v. Chicago, M. & St. P. R. Co.* 180 Wis. 49, 192 N. W. 383. In *Piper v. Chicago, M. & St. P. R. Co.* 77 Wis. 247, 46 N. W. 165, the attention given a fractious team was held sufficient to constitute an irresistible diversion.

In *Nolan v. Milwaukee, L. S. & W. R. Co.* 91 Wis. 16, 64 N. W. 319, it was held that the fact that a person who was injured, stopped to give directions in the matter of loading a car and that he was looking for the stock train which was coming from the opposite direction, did not constitute such a diversion as would excuse his negligence.

In *Koester v. Chicago & N. W. R. Co.* 106 Wis. 460, 82 N. W. 295, it was held that the presence of an engine and caboose which shortly before the accident had passed down a sidetrack over the crossing in question and stopped in plain view did not constitute such diversion as excused the decedent's failure to see the oncoming train.

In *White v. Minneapolis, St. P. & S. S. M. R. Co.* 147 Wis. 141, 133 N. W. 148, it was held that the presence of

another train which had just cleared the crossing in question was not a sufficient diversion of attention. The court said:

"Where there is opportunity to perform this duty to look and listen, no diversion of attention short of prevention of some sort will excuse non-performance. Not, necessarily, physical prevention by the attention being actually physically forced away, though that term has been used, but something akin to it, the term 'irresistibly' being used and applied where a person was prevented from looking by reason of violent efforts to manage a team which had escaped, or was escaping from his control. (Citing cases.)

"The rule discussed does not admit of any exception, especially as regards tracks in a railroad yard, to fit the variant notions of travelers as to whether a car or train is in dangerous proximity, since the track is to be regarded as notice that one is liable to pass in either direction at any time. So before stepping upon the track one must look and listen for a coming train, if there is opportunity to do so, and proceed when informed by his senses that there is none dangerously near."

The specific question presented is, Was the attention of Ronald Johnson irresistibly diverted, within the meaning of that term as used in the law, because of the fact that a man standing south of the road upon which he was traveling and west of the track upon which the train was approaching, was endeavoring to signal him about something for some seconds before the happening of the accident? As before stated, the approaching train must have been in plain sight if any attempt had been made to observe its approach. Ronald Johnson had been engaged in the driving of this truck for some three weeks and was well aware of the fact that he was approaching the tracks of the defendant company. It appears, and his statement is corroborated by that of the railway engineer, that he never saw the train until it was within four feet of him. His car was traveling slowly and apparently under perfect control.

Upon a careful consideration of all of the evidence offered and received in this case, putting that construction upon it which is most favorable to the plaintiff, we can come to no other conclusion than that but one reasonable inference can be drawn from the facts, and that is that the plaintiff at the time immediately preceding the impact and for some considerable time prior thereto was wholly oblivious of his surroundings and failed to exercise even a slight degree of care for his own safety under the circumstances. If, as the jury found, the whistle was not blown and the bell was not rung, if the train was proceeding at a rate of speed such as was testified to by the plaintiff's witnesses, the noise of the train alone must have warned Ronald of danger if there was in his mind at the time any thought of his surroundings. While no one knows for what purpose the barn boss attempted to attract his attention, it seems quite obvious it was for the purpose of preventing Ronald from going upon the tracks. No other reason is even intimated in the testimony. If that be true, Ronald must then have been approaching the track for some appreciable time and at such a rate of speed as that the barn boss thought he was going upon the tracks in the face of the oncoming train without observing it. If, prior to the attempt of the barn boss to attract his attention, the situation indicated peril to the barn boss, it would have indicated peril likewise to Ronald if he was giving the matter even slight attention. The term "irresistible diversion of attention" scarcely seems applicable to the facts in this case for the reason that everything indicates that Ronald had never adverted to the situation, his attention was not drawn away from the situation. The evidence indicates very strongly that he acted in total disregard of the fact that he was about to go upon a dangerous railway crossing, this assuming that the attempt of the barn boss to communicate with him comes within the rule of irresistible diversion as indicated in the

cited cases. If the case rested upon the proposition that the diversion was not irresistible, the defendant's contention in that regard must be upheld.

The whole matter of the duty of a traveler about to enter a zone of danger on a railway crossing was so thoroughly and exhaustively discussed in the recent case of *Waitkus v. Chicago & N. W. R. Co.* 204 Wis. 566, 236 N. W. 531, 237 N. W. 259, that we need not again consider the fundamental principles underlying the rule. Here is the clearest and plainest possible case of inadvertence, total failure to exercise care in any degree. If Ronald had been exercising any degree of care, he would no doubt have connected the barn boss's efforts to hail him with the fact that he was approaching the railway crossing and might for that reason be in danger, but from his own statement he never even looked to the north until the train was within four feet of him. It is a curious commentary upon human nature that circumstances of this kind ever occur, but that they do frequently and repeatedly occur is established by the records in this court. Daily people are going upon the highways with defective tires, insufficient brakes, without headlights, and other defects in motor vehicles which subject them and other travelers to the hazard of death or, what is in many cases perhaps worse, serious permanent bodily injury. Persons who by their own conduct voluntarily subject themselves to such hazards, whether the conduct be intentional or merely inadvertent, ought not to expect to hold others for the consequences of their failure to perform their plain duty in the protection of their own lives and property.

In view of the conclusion at which we have arrived, it is unnecessary for us to consider other questions raised in this case.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to dismiss the complaint.