Heaney, Special Administrator, Respondent, vs. Chicago & Northwestern Railway Company, Appellant.
Peterson, Respondent, vs. Chicago & Northwestern Railway Company, Appellant.

*December 7, 1933—January 9, 1934.*

*John F. Baker* of Milwaukee, for the appellant.

For the respondents there was a brief by *Lehner & Lehner* and *Adolph P. Lehner,* all of Oconto Falls, and *V. J. O'Kelliher* of Oconto, and oral argument by *Mr. O'Kelliher.*

Fritz, J. Defendant appealed in these actions from judgments recovered against it for damages for the deaths of Oscar Peterson and Kenneth Heaney, who were instantly killed in a collision between a Ford coupe in which they were riding and a locomotive, drawing one of defendant's passenger trains, on March 9, 1932, at about 11 o'clock a. m. The collision occurred at the right-angled grade crossing of an east-and-west graveled public highway by a railway track of the defendant, in a farming region. The automobile was being driven eastward by Heaney, who was a high school graduate, twenty-one years of age, and who resided about three miles from that crossing. Peterson, who was a passenger in the automobile, was forty-four years of age, an uncle of Heaney, and resided some distance from that intersection, but had crossed it on a couple of occasions. In a

special verdict the jury found that the train was run over the crossing without blowing the whistle; and without ringing the locomotive bell continuously from a distance of eighty rods south of the crossing until it was reached; that the failure in each of those respects was a proximate cause of the collision; that Peterson did not fail to exercise ordinary care for his own safety; and that Heaney failed to exercise such care and such failure was a proximate cause of the collision, but that it was not more than a slight want of ordinary care. As, on motions after verdict, the trial court approved those findings, and the defendant's failure to blow the whistle and ring the bell constituted negligent omissions of the defendant to comply with sec. 192.29 (4), Stats., by reason of which under sec. 192.29 (6), Stats., the fact that a slight want of ordinary care on Heaney's part contributed to his injury does not bar a recovery, judgments were ordered for the recovery by plaintiffs of the damages assessed by the jury. Defendant contends that the evidence does not support the findings in a number of respects.

In relation to the alleged negligence on its part, defendant contends that there was not sufficient evidence to go to the jury upon the questions of the failure to ring the locomotive bell continuously from a point eighty rods from the crossing and until it was reached, and the failure to blow the whistle eighty rods from such crossing; and furthermore, that such negligence if proven did not constitute a proximate cause of the injuries. In determining whether there is sufficient evidence to sustain the jury's findings, it must be borne in mind that—

"If the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon

a motion for nonsuit or direction of verdict, or by sub-
stituting another answer after the verdict is returned."
*Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113,
115, 116, 228 N. W. 741.

It is true that there is some evidence on the part of the
train crew and several passengers that the whistle and bell
were duly sounded; and Roy Wilson, who was working
between his house and barn about eighty rods to the west
and north of the crossing, testified that he heard the whistle
blown at about the whistling post, which was 1,358 feet
south of the crossing, and then one or two short blasts and
a regular crossing whistle, and also that he heard the bell
ring, just before and after the crash, when the train was at
the crossing.

However, plaintiffs relied on the testimony of three men
who were clearing brush about seventy-five feet east of the
track, and opposite a stump pile which was near the track
and 500 feet north of the whistling post. Between them
and the track there were some trees which somewhat inter-
fered with their view of a train coming from the south,
until up to 750 feet south of the crossing, but there was no
such interference while a train was going over those 750
feet. Those men were intent upon the arrival of the train
as a signal for suspending work for their midday meal.
Their testimony was to the effect that they could and did
see the train as it moved all of the way from the whistling
post to the crossing; that they could see and hear that the
bell was not rung at all between that post and the crossing,
but that they saw and heard it rung when the train was
stopped and backed up, after the collision. In relation to
the whistle they testified that they could hear and see that
it was neither blown at the whistling post nor until the en-
gine was from 120 to 180 feet north of the stump pile,
which would be at about 600 feet north of the whistling post
or 750 feet south of the crossing. Between that point and
until the engine was over the crossing they heard four

blasts and saw the escaping steam. Their testimony in those respects was challenged by conflicting statements testified to by a stenographic reporter, who had noted the answers made by those men to questions which were put to them on an investigation made by the defendant on the day after the collision. However, conflicts, if any, between their testimony on the trial and their former statements afforded no basis for the exclusion of their testimony by the court, or for holding that the plaintiffs were bound by prior *ex parte* conflicting statements made by such witnesses. It was nevertheless for the jury to pass upon their credibility, and the weight of the testimony which they gave on the trial, and if the jury believed the latter to be true, then it was within its province to find that the defendant neglected to ring the bell and to blow the whistle as required by sec. 192.29 (4), Stats. Defendant's contention that its failures in those respects were not proximate causes of the collision will be considered after discussing its contentions that Peterson was guilty of more than a slight want of ordinary care; and that the negligence of which the jury found Heaney guilty, and which it also found was a proximate cause, must have consisted of his failure to look and listen, and, if so, amounted to more than a slight want of ordinary care. In respect to those contentions, the following facts, the existence of which is established or was at least fairly inferable by the jury under the evidence, are material: The surface of the earth along the public road west of the crossing, and to the south of that road and immediately west of the railway track, was somewhat rolling. The surface of the public road was 1.4 feet higher than the railway track at a point 50 feet to the west thereof; and 3.7 feet, and four feet higher at points, respectively, 50 feet, and 240 feet further to the west thereof. At about the latter distance, i. e., 340 feet west of the track, there was the first railway sign for warning a traveler approaching from the west, so

from that point to the track the road sloped downward four feet, and sixteen inches of that descent were within the last fifty feet of the approach to the track. On the other hand, at a point 430 feet south of the public road the rails were in a cut 9.4 feet below the surface of the earth on the west side of the track, but that depth diminished gradually to the north and south of that point. The topographical conditions were such that a man five and a half feet tall could observe only the upper part of a locomotive fourteen feet three inches in height, when they were located, respectively, on the road and the track at the following points: at 300 feet to the west he could see the locomotive 358 feet to the south; at 200 feet to the west he could see it 389 feet to the south; at 100 feet to the west he could see it 455 feet to the south; and at 50 feet to the west he could see it 600 feet to the south. During the entire morning of March 9, 1932, there was a strong, blustering northwest wind and snowstorm. The fall of the snow varied from slack to heavy. Its condition varied from wet to dry and loose. As it was blown from the northwest it covered somewhat the west side of the two railway warning signs, the second of which was located close to the west line of the railway right of way. For 200 feet west of the tracks the graveled, traveled portion of the highway was rough, rutty, icy, and somewhat concealed by a covering of drifted snow, which also somewhat concealed the track, and, according to some of the testimony, was twelve inches deep at some places within the railway right of way.

It was under those circumstances and conditions that Heaney and Peterson approached the track from the west, but there is no testimony as to how they proceeded or what they did after passing Wilson's house. In this class of cases the burden of proof, that a traveler crossing the track was guilty of more than a slight want of ordinary care contributing to his injury, is, as is expressly declared in

sec. 192.29 (6), Stats., upon the defendant. On the other hand, when it appears that there was a failure to look and listen within the zone where the duty exists, such failure constitutes more than a slight want of ordinary care, as a matter of law, unless a sufficient excuse therefor is shown. *Todoroff v. Chicago & N. W. R. Co.* 169 Wis. 554, 558, 173 N. W. 214; *Puhr v. Chicago & N. W. R. Co.* 171 Wis. 154, 161, 176 N. W. 767; *Bahlert v. Chicago, M. & St. P. R. Co.* 175 Wis. 481, 484, 185 N. W. 515; *Waitkus v. Chicago & N. W. R. Co.* 204 Wis. 566, 572, 573, 236 N. W. 531, 237 N. W. 259; *Paine v. Chicago & N. W. R. Co.* 208 Wis. 423, 243 N. W. 205; *Wheeler T. & S. Co. v. Minneapolis, St. P. & S. S. M. R. Co.* 209 Wis. 156, 244 N. W. 569; *Johnson v. Chicago & N. W. R. Co.* 212 Wis. 578, 250 N. W. 417; *Crane v. Weber,* 211 Wis. 294, 247 N. W. 882, 884. In the cases at bar, under the facts and circumstances stated above, it was within the province of the jury to find that a sufficient excuse was shown for the failure on the part of Heaney, as well as Peterson, to notice the warning signs, and to hear and see the approaching train in time to enable them to avoid voluntarily entering the zone of danger without either of them being guilty of more than a slight want of ordinary care contributing to his injury.

Heaney's situation was rather like that of the driver in *Shaver v. Davis,* 175 Wis. 592, 185 N. W. 227, than that of the driver in *Paine v. Chicago & N. W. R. Co., supra,* or in any of the other cases cited above. In the case at bar, as in the *Shaver Case,* there is evidence that there was a blustering high wind, at times a heavy drifting snowstorm, an unfamiliar railway crossing which was traveled but little at the time, and a rough road with snow partly covering it and the tracks. In addition, Heaney was also confronted with icy ruts concealed by some snow, and a downward slope with a more marked dip as he came closer to the track.

Those existing circumstances and conditions undoubtedly occasioned greater difficulty in several respects in the driving and controlling of his automobile, and interfered in that and other respects with the normal opportunities for noticing the railway warning signs, and seeing and hearing the approaching train.

As to Peterson's conduct, there is, particularly in view of the recent decision in *Tomberlin v. Chicago, St. P., M. & O. R. Co.* 208 Wis. 30, 238 N. W. 287, 242 N. W. 677, 243 N. W. 208, and *Paine v. Chicago & N. W. R. Co.* 208 Wis. 423, 243 N. W. 205, even less basis for holding that he was guilty as a matter of law of more than a slight want of ordinary care. In *Tomberlin v. Chicago, St. P., M. & O. R. Co., supra,* we said:

"A passenger in the automobile is not held to such a strict degree of care, and whether his failure to look amounts to contributory negligence is, generally, a jury question."

That rule was followed in *Paine v. Chicago & N. W. R. Co., supra,* and recognized in *Crane v. Weber,* 211 Wis. 294, 247 N. W. 882. It is in accord with the recent decision in *Miller v. Union Pac. R. Co.* 290 U. S. 227, 54 Sup. Ct. 172 (decided December 4, 1933). Our conclusion that the passenger, in the *Crane Case,* under his own and undisputed testimony, was guilty of contributory negligence as a matter of law, was not in disregard of the rule that that issue is generally a jury question. In that case the collision occurred on a clear day at a busy crossing of a level city street by several railway tracks, including some for rapid transportation; and the passenger was well aware of those conditions at that crossing. He testified that he saw and heard the rapidly approaching train forty feet to the right of that crossing, when the automobile, in which he was sitting to the right of the driver, was thirty feet from the track and proceeding at but twelve miles per hour; that it was ap-

parent to him that the driver, who was under sixteen years of age, had not and did not see the train, and was going ahead with no indication of stopping, although, according to the driver's undisputed evidence, he could have stopped within two feet while going at even fifteen miles per hour. As it was undisputed that the passenger heard and saw the train in ample time for the stopping of the automobile, if the driver had been aware or warned of its proximity, there was, of course, no failure and no negligence on the part of the passenger in respect to looking and listening for a train. But because of the manifestly impending danger in view of what the passenger did see and hear, it was clearly necessary for him to warn the driver, instead of doing and saying nothing to the driver. It was because of the passenger's admitted total failure in the latter respects and the manifest causal connection between such failure and his injury, in view particularly of the undisputed fact that the driver, if aware of the proximity of the train, could have readily stopped the automobile in time to avoid the collision, that the passenger was considered guilty of contributory negligence, as a matter of law.

Defendant also contends that neither the failure to sound the whistle before the engine was 660 feet from the crossing nor the failure to sound the bell continuously from a point eighty rods from the crossing, could constitute a proximate cause of the collision. Those contentions are based on the proposition, on the one hand, that the men, who were working in the open to the south and east of the crossing, and Wilson, who was eighty rods to the west and north of it, testified that they were able to hear those sounds and see the train at such distances as would have been sufficient to enable Heaney to stop the automobile in time to avoid the collision, if he had likewise heard or seen the train approaching at such distances from the crossing; and, on the other

hand, that, as the statute does not expressly require the whistle to be sounded otherwise than at eighty rods from the crossing,—which if a train is moving at sixty miles per hour would occur fifteen seconds before the train reached the crossing, and that same period of time would likewise constitute the time of warning by whistle if, in the case at bar, the train was moving thirty miles per hour and the whistle was sounded at 660 feet from the crossing,—the failure to sound the whistle exactly at the whistling post, but, instead, at only 660 feet from the crossing, could not constitute a proximate cause of the collision.

As the legislature in enacting sec. 192.29 (4), Stats., has expressly required the engine bell on a locomotive or train approaching a crossing of the kind involved herein to be rung continuously from eighty rods before reaching such crossing until it is reached, and such ringing does somewhat increase the volume of sound that constitutes warning of a train's approach, it would be unjustifiable to conclude that the complete omission to comply with that statutory requirement could not be a proximate cause of the collision. That is particularly true because under the circumstances in this case, timely and continuing warning was of the utmost importance. What would have been ample time and distance within which to stop an automobile on a clear, level, gravel-surfaced road may well have been entirely inadequate on a rutty, icy, snow-covered road. Coming unexpectedly to a down grade on a road of the latter type, in a blustering storm, with snow flurries obstructing his vision and a heavy wind affecting the movement of the light coupe, the operation and control thereof may well have required most of Heaney's attention, thought, and action. If the jury found that greater concentration was required in operating and controlling the automobile on the unfamiliar, rough, rutty, icy, snow-covered, downward-sloping road, and that be-

cause of the blustering wind and flurries of snow there was considerable interference with Heaney's and Peterson's opportunities for observing, through the windows of the moving and shaking automobile, the warning signs and tracks, which were somewhat concealed by snow, and for discovering by sight and hearing the approach of the train in time to avoid a collision, then every prescribed and available sound and signal that should have been given in the exercise of ordinary care would have increased their actual opportunities to discover the danger in time to avoid injury. In that situation every failure to fully sound warning signals as prescribed by statute could reasonably be found to constitute a proximate cause. Although it is true that if the train had been approaching at sixty miles per hour instead of at thirty miles, Heaney and Peterson would have had but fifteen seconds warning by a whistle sounded at the whistling post, and that may have been inadequate to enable them to avoid entering the zone of danger in view of the manner in which they were proceeding, it does not necessarily follow that a whistle sounded at the post with the train running at but thirty miles per hour, and constituting a warning of thirty seconds instead of but fifteen seconds, would not have enabled Heaney with the advantage of double the time of warning to stop in time to avoid the collision. Stated in terms of feet instead of seconds of time, such an earlier signal would have also doubled the distance within which to control the movement of the automobile, and correspondingly increased the travelers' opportunities to avoid injury. Alleged errors in several other respects, which have been assigned by the defendant, are not considered prejudicial.

*By the Court.*—Judgments affirmed.