CLARK, Respondent, vs. CHICAGO, MILWAUKEE, ST. PAUL
& PACIFIC RAILROAD COMPANY, imp., Appellant.
THIEMAN, Respondent, vs. CHICAGO, MILWAUKEE, ST.
PAUL & PACIFIC RAILROAD COMPANY, imp., Appellant.

*January 12—February 6, 1934.*

For the appellant there were briefs by *Bender, Trump, McIntyre & Freeman,* attorneys, and *Rodger M. Trump* and *Ronold A. Drechsler* of counsel, all of Milwaukee, and oral argument by *Mr. Trump.*

For the respondents there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *Daniel H. Grady.*

WICKHEM, J. These cases arose out of a railroad crossing accident which happened on November 5, 1930, at about 7:37 a. m. A repair truck of the Wisconsin Telephone Company, proceeding south on Ingersoll street, was struck by defendant's train, resulting in the death of Thieman and Clark. The truck was driven by defendant Preslaski. Thieman was sitting in the front seat with the driver. Clark, with others of the repair crew, was sitting inside the truck, which was a covered wagon that afforded no lookout. The only two men of the crew in a position to make effective observations were the driver, Preslaski, and Thieman. At the crossing in question there are six parallel tracks crossing the street at right angles. The crossing was protected by flagmen of the Northwestern and St. Paul roads. The Northwestern tracks were the northerly, and those of the defendant the southerly tracks. The truck proceeded upon the crossing from the north in third speed and at about eight miles per hour. There is a conflict of evidence as to whether defendant's flagman was out in time to give proper warning of the approach of the train. The jury found that he was

not, and this finding is not contested here. The jury found no negligence on the part of the railroad company other than that involved in the flagman's failure to give timely warning.

An ice house and a string of box cars about 300 feet west obstructed the driver's view in that direction, which was the direction from which the train was coming. There was no wigwag or automatic bell at the intersection.

The first assignment of error is that the court reopened the case for further evidence after the jury's verdict was returned. This was done to permit the plaintiff Thieman to introduce in evidence an ordinance of the city of Madison requiring the maintenance of a flagman at this intersection. The ordinance in question requires the defendant company, within ninety days after the passage and publication of the ordinance, "to maintain a flagman at the crossing on Ingersoll street, so as to provide protection to the main traveled tracks at said crossing between the hours of 6 a. m. and 10 p. m. Failure and neglect to comply with this ordinance shall be punishable by a fine of $10, and each day's failure and neglect to so comply shall be considered a separate offense." The purpose of introducing the ordinance was to make applicable to the facts in the *Thieman Case* the provision of sec. 192.29 (6). This section provides, with reference to the kind of accident involved in this case, that where the injury or death is the result of failure on the part of the railroad company to comply with the requirements of this section, the fact that the person injured or killed was guilty of a slight want of ordinary care contributing to the injury or death shall not bar recovery. Among the requirements of the statute, failure to comply with which renders the defense of slight want of ordinary care unavailing, is the following:

"Sec. 192.29 (3) (b) Flagmen or gates shall be placed and maintained, or such mechanical safety appliances shall be installed upon such public traveled grade crossings in

▟

villages and cities as the city or village authorities may direct."

It is the contention of the defendant that the statute is satisfied, and likewise the ordinance, if the company stations and pays a flagman; that, for example, no penalty could be imposed upon the company under the ordinance, assuming the company to have hired and stationed a flagman at this crossing, because of a negligent failure by the flagman on a particular occasion to give timely warning of the approach of a train. It is therefore contended that sec. 192.29 has no application to any negligence attributable to the railroad company in this case; that such negligence is ordinary common-law negligence; that the jury's finding that Thieman was guilty of no more than a slight want of ordinary care is immaterial; and that Thieman's contributory negligence bars recovery for his death.

As far as the procedural aspects of this assignment are concerned, we find no prejudicial error. It was certainly unusual and perhaps irregular to receive the ordinance after the verdict, but there was no issue of fact with respect to it, and its admission did not affect the submission of the cause to the jury. Had the court not submitted the question whether Thieman was guilty of more than slight want of ordinary care, a different situation might have been presented, but here the error, if error it was, neither affected the issues nor prejudiced the defendant. The fact that defendant hired a flagman and stationed him at the crossing is conceded. This negligent failure to give timely warning is established by the verdict of the jury. The admission of the ordinance introduced into the record an entirely uncontroverted fact, leaving only a question of law as to the construction and application of sec. 192.29.

If the principal question upon this assignment were to depend for answer upon an interpretation of the ordinance in the city of Madison, defendant's contentions would be

difficult to meet. The ordinance provides a penalty for each day that a flagman is not maintained, and it may be that the ordinance would be violated only by failure on the part of the railroad company to hire a flagman and to station him at the crossing. The question, however, involves the construction not of this ordinance but of sec. 192.29. The ordinance completely exhausts its function under this section when the municipal authorities designate the crossings within the city which shall be protected by flagmen or mechanical warnings, and determine the type of protection to be provided. An examination of the provisions of sec. 192.29 indicates that all are designed to promote safety at railroad crossings by limiting the speed of trains and by providing travelers upon the intersecting highway with adequate and timely warning of their approach. As stated in *Jorgenson v. Chicago & N. W. R. Co.* 153 Wis. 108, 140 N. W. 1088:

"It is . . . a statute *in favorem vitæ.* . . . The duty of the courts is to give effect to the legislative intention, if the intention be clear; to give the law such meaning (if there be room for two meanings) as will result in the accomplishment of the legislative purpose, rather than a meaning that will tend to defeat the purpose."

In the *Jorgenson Case* it was contended by the railroad company that the obligation imposed by statute to maintain and operate gates does not require the company to keep the gates in "perfect condition every minute whatever happens, but must be reasonably construed as meaning only a duty to keep them in a state of repair, i. e. to put competent operators in charge, employ competent repair men, and use reasonable diligence to keep the same in continuous operation." The court declined to give such a restricted meaning to the statute, and held that if the gates were not in operation, the statute would have to be satisfied by placing a flagman at the crossing for the time being, or by temporarily reducing the speed of trains.

While the *Jorgenson Case* is not strictly in point, it does furnish a guide to the construction of this statute. If there is room for construction, the statute should be construed to accomplish the legislative purpose of promoting safety and avoiding crossing accidents.

Reviewing somewhat more in detail the provisions of the statute, we find first provisions that if the railroad shall operate gates or shall maintain a flagman, or maintain and operate an efficient electric signal, at public traveled grade crossings in any city, it may operate its trains at a speed greater than is otherwise permitted. The section forbids the operation of a locomotive over a grade crossing within any city, except where gates are operated, or a flagman is stationed, unless the engine bell be run continuously within twenty rods of and until such crossing shall be reached. It is provided that flagmen or gates shall be placed and maintained, or other mechanical safety appliances installed when directed by the city authorities. The section evidences a clear legislative purpose to insure, so far as possible, that adequate warning be given to the traveling public. The speed of trains is made to depend upon the presence of a flagman, or the installation of mechanical safeguards. The ringing of the bell upon the engine is likewise required at crossings where such protection is not given. It was held in the *Jorgenson Case* that with respect to mechanical appliances the statute required not merely installation but continuous, efficient operation. There is, of course, a manifest difference between a flagman and an electrical appliance. The word "maintain," except as it may be considered to mean "station and pay," seems more applicable to mechanical appliances than it does to a human agency. This word, however, is used with reference to the flagman as well as the mechanical contrivance, and it is used in addition to the word "place." If it means anything, and if the statutory purpose is to be accomplished, it means that the flagman must not merely be provided but

that he must give the warning that he is hired to give. This is especially true in view of the fact that either gates, or a flagman, or other mechanical warning devices, are permitted at the crossing. They are treated on an equality so far as the statute is concerned, and in view of the construction of this statute by the *Jorgenson Case*, with respect to mechanical protective devices, we think the statute must be held to be violated in such a way as to bring into operation the slight want of ordinary care doctrine whenever the flagman, by reason of negligence imputable to the company under the doctrine of *respondeat superior*, fails to give proper warning of the approach of trains. That this is not the only construction which may reasonably be urged can readily be conceded. The language of the section is open to this construction, however, and it results in accomplishment of the legislative purpose, as evidenced by the entire section.

It is next contended that the ordinance here offered is invalid for the reason that sec. 195.28, which gives to the Public Service Commission the power, on the complaint of the city council, to order gates or a flagman, has abrogated sec. 192.29 (3) (b). We cannot agree to this contention. The latter section was included in its present form in the 1929 codification and was re-enacted at that time, indicating the legislative intent that both sections continue in force.

The next assignment of error is that the court should have held as a matter of law that Thieman was guilty of more than a slight want of ordinary care. The contention is based upon the fact that the jury found Thieman negligent as to lookout, and that this court has consistently held that a negligent failure to look constitutes as a matter of law more than a slight want of ordinary care. *Dax v. Chicago, M. & St. P. R. Co.* 185 Wis. 432, 201 N. W. 736; *Roth v. Chicago, M. & St. P. R. Co.* 185 Wis. 580, 201 N. W. 810; *Todoroff v. Chicago & N. W. R. Co.* 169 Wis. 554, 173 N. W. 214; *Puhr v. Chicago & N. W. R. Co.*

171 Wis. 154, 176 N. W. 767; *Bahlert v. Chicago, M. & St. P. R. Co.* 175 Wis. 481, 185 N. W. 515; *Waitkus v. Chicago & N. W. R. Co.* 204 Wis. 566, 236 N. W. 531, 237 N. W. 259. None of the foregoing cases involved a guest or passenger. The situation with reference to the latter is ruled by *Tomberlin v. Chicago, St. P., M. & O. R. Co.* 208 Wis. 30, 32, 238 N. W. 287, 242 N. W. 677, 243 N. W. 208. It was there said that "While the driver of the automobile is guilty of contributory negligence as a matter of law if he fails to look, a passenger in the automobile is not held to such a strict degree of care, and whether his failure to look amounts to contributory negligence is, generally, a jury question." If the question whether the failure of a passenger to look amounts to contributory negligence is generally a jury question, it follows with greater reason that the question whether such failure constitutes more than a slight want of ordinary care must generally be for the jury. There are no facts present here to take this case out of the rule. There is a considerable dearth of testimony, due to the fatal termination of the accident, as to what Thieman did. The fact that the crossing was protected by flagmen, and that neither flagman gave warning, might have been considered as somewhat affecting Thieman's obligation to keep a sharp lookout. Other factors, concerning which there is no evidence and which are consequentially speculative, might affect the degree as well as the fact of Thieman's negligence. The proof may well have left the jury unconvinced that Thieman's negligence was more than slight. The burden was upon defendant to prove not merely the fact of contributory negligence, but that it exceeded slight want of ordinary care, and we cannot say as a matter of law that this burden was so met as to leave no jury question. The situation here is quite different from that in the case of *Crane v. Weber,* 211 Wis. 294, 247 N. W. 882, where it was considered by a majority of the court that the admissions of the passenger upon the

trial were sufficient to indicate that he was guilty of more than a slight want of ordinary care as a matter of law. See, also, *Heaney v. Chicago & N. W. R. Co.* 213 Wis. 670, 252 N. W. 173. In view of this conclusion there is no occasion to determine the soundness of plaintiff's contention that there was no evidence from which the jury could find Thieman guilty of negligence in any degree.

The foregoing assignments of error have reference only to the appeal in the *Thieman Case*. The next assignment, which is applicable to both appeals, can be very shortly stated. The driver was guilty of negligence. He was the agent of the Telephone Company, and his negligence is imputed to the Telephone Company. Had the Telephone Company sued the defendant for injuries to its truck, it could not have recovered due to the negligence of its driver. The Telephone Company was also the employer of both Clark and Thieman. As such employer it was required, by the provisions of the workmen's compensation act, to pay an award to the dependents of each employee, amounting to $6,000 plus funeral expenses of $200. Upon the payment of these awards sec. 102.29 operated to assign the cause of action to the Telephone Company. The Telephone Company reassigned the causes to Rose Clark and Dagney Thieman, widows of Clark and Thieman, respectively. The judgments in these cases provide that out of the amount recovered in these actions the Telephone Company is to be repaid the amounts that it was required to pay under the terms of the workmen's compensation act. Defendant contends that if the judgments are permitted to stand unmodified, the Telephone Company would entirely escape liability for an accident to which the negligence of its employee proximately contributed, and that the result is inequitable and unjust. The contention is without merit. The Telephone Company sustained no tort liability to its workmen or to their dependents by reason of its employees' negligence. It sustained no liability in common with the defendant, and

under no circumstances would it be liable for contribution. The causes sued upon here belong to the plaintiffs. Defendant is liable for the full amount of damages, and it is no concern of defendant what disposition is made of the proceeds of this policy as between plaintiffs and the Telephone Company. See *Bernard v. Jennings,* 209 Wis. 116, 244 N. W. 589; 12 North Carolina Law Review, p. 73.

*By the Court.*—Judgments affirmed.