SWEEO, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*February 13—March 11, 1924.*

*Railroads: Grade crossings: Presumption that deceased used ordinary care: Look-and-listen rule: Evidence: Sufficiency.*

1. Where a truck driver had customarily traveled over a railroad crossing for two years, he is presumed to have known of the location of the main track and the dangers connected therewith and that the gates were not operated early in the morning. p. 238.

2. Where the driver of plaintiff's automobile truck was killed in a collision with a locomotive at such crossing, the presumption that he acted with ordinary care because of the instinct of self-preservation yields to evidence showing that he did not exercise ordinary care. p. 238.

3. A failure to look and listen within the zone where the duty exists, without sufficient cause, constitutes more than a slight want of ordinary care. p. 240.

4. While under the law the driver of an automobile approaching a railroad grade crossing is not bound to stop before crossing the tracks, it is incumbent upon him to exercise ordinary care and to timely use his senses of sight and hearing. p. 240.

5. In an action for damage to an automobile truck caused by a collision with a passenger train, where it appeared that the truck driver, who was familiar with the crossing, approached to the point of collision on the main track without decreasing his speed and was struck by the engine, which he could have seen at a distance of seventy-five feet when he was eighteen feet from the track and at a distance of 1,500 feet when he was ten to twelve feet from the track, it is *held* that he was guilty of contributory negligence as a matter of law. p. 241.

APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge. *Reversed.*

The action is one for damage to an automobile truck caused by a collision of the truck, while operated by plaintiff's driver, with a passenger train of the defendant, operated on its main track in a northeasterly direction in the city of Rhinelander. · Pelham street runs in a northeasterly and southwesterly direction and is intersected by five tracks of the defendant company, the most northerly track being the main track, and for convenience sake will be called track No. 5. To the south of track No. 5 is a passing track, and south of such passing track are three sidetracks. The distance from the center of track No. 5 to the center of track No. 4 is 14.9 feet; from track No. 4 to track No. 3, 56.1 feet; from track No. 3 to track No. 2, 28.4 feet; from track No. 2 to track No. 1, 32.2 feet. The land both northeasterly and southwesterly of the railroad tracks is platted into lots and blocks, and the street immediately southwesterly of the railroad tracks is known as Mercer street. · The streets southeasterly from Pelham street are Conro street and Blackburn street. On the southwest corner of the block south of these tracks, being the southeast corner of Pelham and Mercer streets, there was a house, and about 140 feet west of the main track there was a bill-board about fifty feet in length, the south end whereof is about twenty feet nearer the railroad track than the north end, and between such bill-board and the house were located three shade trees. About sixteen feet to the east of Pelham street on the third track was located a freight car. A water tank supported by columns, about seventy-seven feet southerly of Pelham street, was located between the third and fourth tracks. On the fourth track, located close to Pelham street, there were four box cars, and some dispute appears in the evidence as to whether the first car was flush with Pelham street or whether it was about thirty feet distant therefrom. We will assume, however, that the car was flush with Pelham street.

At about 7 o'clock in the morning on the day of the accident, one Hanson, an employee of the plaintiff, drove plaintiff's automobile truck northwesterly on Mercer street, turning onto Pelham street, and proceeded northeast onto the main track of the defendant, where the collision occurred. Hanson had been in the employ of the plaintiff for about two years, and during such period almost daily covered the same route at the same time. At the main crossing the defendant company maintained gates, but such gates were not operated until after 7:30 in the morning. While Hanson was driving as aforesaid he had with him on his truck, on the left running-board and immediately next to the cab, a fourteen-year-old boy by the name of Onson. Onson, looking through the windows of the cab, saw the train approaching from the southeast, and immediately jumped from his position onto the street and ran about the distance of the truck towards the southwest on Pelham street, when the collision took place.

Ella Reed, a witness for the plaintiff, testified that while going up Pelham street in the direction of the main track, and when she had about reached the second track, the plaintiff's truck passed her, and she also testified that her attention was called to the train by the rumbling noise, and that she saw the accident. Just before the truck passed, in looking towards the east, she saw the train coming at a distance of about two blocks. It also appears from the evidence that from the time that the operator of the truck aforesaid turned into Pelham street until the time of the collision the truck was operated at a uniform rate of speed not to exceed eight to ten miles an hour. Hanson, the operator of the truck, was killed in the accident. The testimony shows that the train, at or immediately prior to the accident, was running at the rate of between twelve and twenty-five miles per hour.

The case was submitted to the jury on a special verdict, and it was found (1) that the train was running at a rate

of speed in excess of twelve miles per hour; (2) that such speed was a proximate cause of the accident; that the engine-man failed to ring the engine bell continuously while the engine passed over the last twenty rods before reaching Pelham street crossing; that the failure to so ring the bell was a proximate cause of the accident; and that Hanson, the truck driver, was not guilty of a want of ordinary care. Further facts will appear in the opinion.

*Samuel H. Cady* of Milwaukee, for the appellant.

For the respondent there was a brief by *J. & M. Van Hecke* of Merrill, and oral argument by *John Van Hecke.*

DOERFLER, J. The defendant's negligence in operating the train at a speed in excess of twelve miles per hour immediately preceding the accident is found by the jury and is amply sustained by the evidence. The defendant was also found guilty of negligence by failure to keep the bell ringing continuously while passing over the last twenty rods before the collision.

The trial judge stated in his opinion:

"There is some doubt whether the evidence sustains the finding of failure to ring the bell, and if that were the only ground of negligence found, the court would not be disposed to let the verdict stand because of the great preponderance of evidence against the finding."

But let us assume that the verdict of the jury with respect to the ringing of the bell is established by the evidence. This leaves for our consideration the question of contributory negligence of the operator. The train in question was what is known as the Fishermen's Special, consisting of an engine and caboose and four large, steel passenger coaches, the entire train being of the length of about 400 feet. The train when on schedule time arrives at the Rhinelander depot at about 5 o'clock in the morning. It was therefore about two hours late. At the time of the accident the gates were not operated, but this fact is of no

importance in the instant case for the reason that Hanson, the operator of the truck, had traveled over this route customarily for a period of two years at the same time, and it must therefore be presumed that he was aware of this fact.

. It appears conclusively from the evidence that Hanson, from the time that he entered Pelham street and proceeded northerly thereon, neither accelerated nor diminished the speed of his truck. At the rate of speed at which the truck was operated it could have been brought to a stop within a few feet. While proceeding on his course on Pelham street, up to the time of the accident, his view was greatly obstructed by reason of the situation. There were, however, numerous opportunities afforded him, before he reached the main track, to make an observation and to ascertain the approach of the train. At about 189 feet from the main track he had a full view of the track of from 248 feet from the point of collision to 500 feet from such point; and 100 feet from the main track his view extended from 288 feet from the point of collision to 738 feet from such point. From a distance of eighteen feet from the track he could look down the track a distance of 75 feet; from a distance of sixteen feet, 90 feet; from a distance of fourteen feet, 120 feet; from a distance of thirteen feet, 188 feet; and from ten to twelve feet, a distance of upwards of 1,500 feet.

Hanson having been killed in the accident, the law raises the presumption that he acted with ordinary care because of the instinct of self-preservation. This, however, is a mere presumption, and yields to evidence showing that he did not exercise ordinary care. From the time he drove onto Pelham street until he reached the point of collision he had a number of opportunities to observe the approach of the train. The very existence of these tracks in and of itself calls to the mind the possibility of danger by an approaching train. Before crossing the first track, at the rate of speed he was traveling he could have generally sized up the situation of the sidetracks as he approached them. While

he was confronted with danger in crossing the sidetracks, nevertheless such danger ordinarily is not as great as that which confronts him when he attempts to cross a main track, the greater danger in crossing a main track consisting of the greater rate of speed at which trains are operated thereon. It must be conceded that his attention to a large extent was consumed, as he passed along over these tracks, in determining the approach of a train on the sidetracks; therefore it becomes quite evident that he may have been in the exercise of ordinary care while crossing such sidetracks, and not observing the approach of the train by reason of the obstructions. It is likely that, assuming that he made his observations as he proceeded along on his course, he unfortunately did so at a time when the obstructions prevented his obtaining a proper view. But there is a very pronounced outstanding fact in this case, which we deem decisive, and that is that it must be presumed that he knew of the location of the main track and the dangers connected with crossing such track without exercising a proper degree of care. Under the circumstances here detailed, where numerous obstructions exist to hide the view of the observer before reaching the principal point of danger, the care required of the operator of a car increases as he approaches the principal danger point, which is located upon the main track. The fact stands out in this case that the driver proceeded along Pelham street to the point of collision at a uniform rate of speed. This is strongly persuasive that as he approached the main track he made absolutely no observation whatsoever. Nothing in the evidence is indicative that he was taken by surprise; on the contrary, it appears that he drove on in the very face of approaching danger, and in front of the rapidly moving engine, not only without diminishing his speed but without swerving his truck to the right or to the left. From a distance of about eighteen feet from the main track his view was unobstructed towards the east for a distance of seventy-five feet, and this view increased

so that between ten and twelve feet from such track it was enlarged to upwards of 1,500 feet.

There is but one conclusion to be arrived at under such circumstances, and that is that he neither looked nor listened, for had he listened he could have heard the rumbling of the train at such close distance. The witness Reed heard this rumbling while the train was upwards of two blocks distant from the crossing. And whether the truck driver heard it or not, the law does not only charge him with the use of his sense of hearing but also with his sense of sight. The sense of hearing is oftentimes deceptive and is greatly interfered with by weather conditions. But the morning in question was a bright, clear morning. He could have seen in time had he looked, and if he did not see, it logically follows that he did not look. Onson saw the train, and ran back a distance of the length of the truck before the collision happened. If Onson could see the train, there is no reason why Hanson could not have done likewise. While under the law he is not necessarily required to stop his machine before crossing a track, nevertheless it is incumbent upon him to exercise ordinary care, and the exercise of such care required him to timely use his sense of sight and of hearing.

In *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 82 N. W. 295, it is said:

"If, during any part of his course, the track is obscured from his vision, the duty is all the more imperative to avail himself of every possible unobscured opportunity, and if partial obstruction to vision or hearing exist, to make every effort to overcome such obstruction. Omission of any reasonable effort likely to be effective is negligence as matter of law, not merely is it evidence of negligence."

This action is brought for property damage and not for personal injury, but even in cases of personal injury a "failure to look and listen within the zone where the duty exists, without sufficient cause, constitutes more than a slight want of ordinary care." *Bahlert v. C., M. & St. P. R. Co.* 175 Wis. 481, 185 N. W. 515.

Krembs v. Merrill, 183 Wis. 241.

Plaintiff's counsel rely upon *Swalm v. N. P. R. Co.* 143 Wis. 442, 128 N. W. 62. The facts in that case, however, differ materially from those in the instant case. In the *Swalm Case* the plaintiff testified that he both looked and listened, and that no warning or signal was given indicating the approach of the engine. In that case there was evidence that the engine could not have been seen by him at a distance of over sixty or seventy feet. In the instant case, just before crossing the main track, the engine could have been seen, had the driver of the truck looked, a distance of seventy-five feet when he was eighteen feet from the track, and a distance of 1,500 feet or more when he was ten to twelve feet from the track.

We hold under the evidence, as a matter of law, that the driver of the truck did not exercise ordinary care, and that he was guilty of contributory negligence which proximately contributed to producing the damage.

*By the Court.*—The judgment of the trial court is reversed, and the cause is remanded with directions to dismiss the complaint.