BIERSACH, Special Administratrix, Appellant, vs. WOLF RIVER PAPER & FIBER COMPANY, Respondent.*

*September 12—November 20, 1945.*

* Motion for rehearing denied, with $25 costs, on January 8, 1946.

For the appellant there was a brief by *Eberlein & Eberlein* and *M. G. Eberlein* of Shawano, and *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner* of Oconto Falls, and oral argument by *M. G. Eberlein* and *Adolph P. Lehner*.

For the respondent there was a brief by *Benton, Bosser, Becker & Parnell* of Appleton, and oral argument by *Andrew W. Parnell*.

BARLOW, J. The jury found the deceased causally negligent as to, (1) lookout, and (2) with respect to the position he occupied on or near defendant's narrow-gauge track; and found defendant causally negligent, (1) in failing to provide a place of employment which was as free from danger to the life, health, safety, or welfare of frequenters as the nature of the employment and place of employment would reasonably permit, and (2) in failing to furnish and use safety devices and safeguards, and adopt and use methods and processes

which were reasonably adequate to render such place of employment as safe for frequenters as the nature of the business would reasonably permit; and apportioned the negligence at forty per cent against defendant and sixty per cent against deceased. Judgment was entered on the verdict, dismissing plaintiff's complaint.

The facts in general are not in dispute. Deceased, Neils W. Peterson, was station agent for the Chicago & North Western Railway Company at Shawano, Wisconsin, for about two years prior to his death. Defendant and respondent, Wolf River Paper & Fiber Company, is a manufacturer of pulp and paper, and operates its business at its mill in the city of Shawano. Among the buildings on its premises are the pulp mill and paper mill. The pulp mill is eighty feet easterly and westerly and eighty feet northerly and southerly. Commencing at the southwest end and extending easterly on the south side is a loading platform 57 feet long, 13.5 feet wide on the west and tapering to a width of 5.5 feet on the east, and 3.5 feet above the ground level. Near the westerly end of the pulp mill on the south side is a door 6.8 feet in width, opening into the mill and onto the platform. The distance between the south platform of the pulp mill and the north wall of the paper mill is 62.5 feet.

The Chicago & North Western Railway Company has a standard-gauge railway spur track extending generally east and west, the north rail of which is 3.8 feet south of the edge of the pulp-mill platform. This track is known as the "spur" or "chip" track, and is used by the railway company to bring in and remove cars for loading or unloading purposes at the ground wood mill located easterly of the pulp mill. The distance between the rails of the chip track is 4.7 feet.

Commencing inside the pulp mill there is a narrow-gauge two-rail track, similar to the railway track, extending southerly to the paper mill. The distance between the rails of the narrow-gauge track is 2.7 feet. The length of the track inside

the pulp mill is 14.8 feet and the width of the loading platform over which it passes is 11 feet. The space from the south edge of the platform over the railway track to the ground level beyond the south rail is covered by a ramp or tramway which can be raised and lowered to permit railway traffic on the chip track. The narrow-gauge tracks are level for a distance of 25.8 feet from inside the pulp mill, extending southerly to the south end of the loading platform. At that point they drop 2 feet in 18 feet, and from there on drop another 2 feet in 45 feet. On this narrow-gauge track defendant operates a truck which is approximately 8.5 feet long and 5 feet wide, with flange wheels. It has a platform which is about 2 feet above the ground level. On the north end of this truck is a small platform somewhat lower than the floor of the truck, on which the operator of the truck rides. On that end is a brake made out of a 2x4 timber attached to the lower end of a cross timber, to which on each side is attached a wooden shoe on which is attached rubber belting used to brake against the flange wheels by application of the 2x4 lever.

This pulp truck is loaded with two parallel rows of pulp bales to a height of 6.5 feet, the load weighing about four tons. While being loaded the south end of the truck is just inside the south door of the pulp mill. After loading, the two men who loaded the truck, and are known as roll-skinners, and the man in charge of the truck set it in motion by pushing the truck from the north end until the front end of the truck enters onto the ramp at the south end of the loading platform where, because of the downgrade, the truck gains sufficient momentum to travel to and into the paper mill. The man in charge of the truck mounts the platform on its north end and rides it to the mill. The truck is returned to the pulp mill by means of a chain attached to its north end, which operates over a winch located in the pulp mill. A pedestrian walking from east to west in the middle of the railway track could first see the truck in the pulp mill at a point 20 feet east of

the intersection of both tracks, and the whole truck would come into view at a point 9 feet east of the intersection of both tracks. A person approaching from the west could first see the truck at a point 18 feet west of the interseotion of the two tracks and the whole truck would be visible to him at a point 5 feet west of the intersection of both tracks.

Since the fall of 1942, respondent maintained a large pile of pulp in the northwest corner of the right angle formed by the south rail of the chip track and the east rail of the narrow-gauge mill track. This pile measured 12 to 14 feet from north to south and 12 to 15 feet east and west, and was 12 to 15 feet high. It was located approximately 4 feet south of the south rail of the chip track and approximately 2 feet east of the east rail of the narrow-gauge track, and tapered or form#d a wedge. It was piled so as to afford practically no clearance between the stationary pulp pile and the truck load of pulp as it passed southerly on its journey into the mill.

Located just above the pulp-mill door is a klaxon auto horn, which is turned on just previous to the time the loaded pulp truck is set in motion. A similar horn, pointing inward, is above and inside the north door of the paper mill.

The truck operator had only been operating the truck four days when the accident happened. He had never been in-formed of persons walking on the track and had never seen the deceased on any trip before. He could not see in front of the truck except a long distance ahead, and there was no opportunity to look until the north end of the truck cleared the pulp-mill door. He did not see Peterson and did not know where he came from or what course he followed. There was no fixed time when the truck would proceed with a load to the paper mill. It made eight or ten trips every eight hours.

The deceased Peterson, fifty-five years of age, checked the west railway yards, including the defendant's mill yards, for demurrage, daily for a period of two years prior to the day he was injured. He would drive his automobile to the mill

yard, park it there and would walk on the chip track. On June 17, 1943, deceased left his home in the morning to go to work, parked his automobile at the paper-mill yards, where it was found after he had been injured. There is no testimony where he was from the time he left his parked automobile and the time of his injury. On this morning, the truck operator, while taking the load of pulp from the pulp mill to the paper mill, felt a jolt as he passed the large pulp pile, and after he had passed the south edge of the pulp pile saw Peterson lying behind the truck across the narrow-gauge tracks. He raised an arm and motioned the truck operator on. There were fresh marks on the large pulp pile, the first mark being a short distance south of the northwest corner and continuing southerly 5 to 6 feet. Mill employees moved Peterson from where he fell, called an ambulance and had him removed to a hospital, where he died late that same afternoon. There was found in deceased's possession a book wherein were railway car numbers, one being the number of a car spotted on the railway chip track east of the pulp mill.

Appellant contends that the answers of the jury finding the deceased Peterson guilty of negligence as to lookout and the position assumed by him should have been changed by the trial court, for the reason that there is no evidence to sustain either finding. No one saw the accident and no one saw the deceased Peterson immediately prior to the accident which resulted in the fatal injuries by him sustained. Appellant relies on the presumption that the deceased Peterson used due care for his own safety, and contends that there is no evidence to sustain the findings of the jury. Appellant is entitled to the presumption claimed, but that presumption is not conclusive. It is rebuttable and ceases to have force when credible evidence is adduced which permits a contrary inference. *Finkelstein v. Chicago & N. W. R. Co.* (1935) 217 Wis. 433, 259 N. W. 254; *Sweeo v. Chicago & N. W. R. Co.* (1924) 183 Wis. 234, 197 N. W. 805; *DeKeyser v. Mil-*

*waukee Automobile Ins. Co.* (1941) 236 Wis. 419, 295 N. W. 755.

The complaint alleges that the deceased was walking west on the railroad track at the time he was struck by the truck traveling over the narrow-gauge track, and no evidence was introduced by either party to disprove this allegation. It is the theory on which plaintiff's case was tried and the evidence is undisputed that under those conditions the deceased could have seen the truck in the pulp mill at a point 20 feet east of the intersection of both tracks and the whole truck would have come into view at a point 9 feet east of the same intersection. In addition to this there was the sounding of the klaxon horns just prior to and during the time the truck was being moved. The narrow-gauge track or tramway extended over the spur track. Anyone traveling along the spur track, and especially a railroad man, either knew or should have known that this narrow-gauge track or tramway was extended across the spur track for a purpose, and the further fact that the deceased had checked this spur track for spotted cars numerous times during the previous two years would warrant the jury in concluding that at the time of the accident the deceased knew the purpose for which the narrow-gauge track was used and that it was dangerous for him to be on the track or too near to it. From all the facts the jury apparently concluded that the deceased either saw the truck or should have seen the truck in time to avoid the injury. It is considered that there is ample evidence to overcome the presumption of due care on the part of the deceased and to sustain the finding of the jury that the deceased was guilty of negligence as to lookout.

Was the deceased Peterson negligent as to the position assumed by him? While the truck operator did not see the deceased prior to the time he was struck, his testimony is that while taking the load of pulp from the pulp mill to the paper mill he felt a jolt as he passed the large pulp pile, and after

he had passed the south edge of the pulp pile he saw Peterson lying behind the truck across the narrow-gauge tracks. This pulp pile had been there for a considerable period of time and the north end was approximately 2 feet east of the east rail and tapered or formed a wedge along the track. It is argued that unless there is proof that the deceased saw the truck approaching it was not negligence to place himself in the position the jury apparently found he was in. From all the facts in the case the jury had a right to believe that the deceased knew there was not ample space between the pulp pile and the passing truck on the narrow-gauge track for a person to stand without being injured. If the jury believed that the deceased had this knowledge and believed the testimony of the truck operator that he felt a jolt while passing the pulp pile with the truck, they were justified in finding the deceased negligent as to the position assumed by him, and if the jury believed that the deceased was struck while between the narrow-gauge tracks, they were justified in arriving at the same conclusion. Unless the deceased was between the narrow-gauge tracks or so near to them that the truck would strike him he could not have been injured. To argue that there is no evidence to establish his position at the time he was struck cannot be seriously considered. It is considered that there is ample evidence for this finding on the part of the jury. We quote with approval the cases cited by the trial court in its opinion, wherein it is said in *Sweeo v. Chicago & N. W. R. Co.* (1924) 183 Wis. 234, 240, 197 N. W. 805:

"He could have seen in time had he looked, and if he did not see, it logically follows that he did not look."

In *Finkelstein v. Chicago & N. W. R. Co.* (1935) 217 Wis. 433, 436, 259 N. W. 254, the court said:

"In a situation like this, it is presumed that the deceased exercised ordinary care for his safety. That presumption,

however, is not conclusive. It is rebuttable and ceases to have force when credible evidence is adduced which permits a contrary inference. It seems clear that the court, sitting as a trier of the facts, was warranted in inferring that the deceased did not look and did not listen before driving upon the tracks; that had he done so, he would have observed or noted the approach of the train in time to avoid injury. We think the court was permitted to draw such inferences even though the fireman did not actually observe the deceased proceeding toward the track until the locomotive on which he was riding had passed through the smoke from the switch engine."

And again in the case of *Evanich v. Milwaukee E. R. & L. Co.* 237 Wis. 111, 295 N. W. 44, a pedestrian ran toward and in front of a streetcar which he desired to board. The attempt resulted in fatal injuries to him. In an action against the streetcar company, the jury found the operator of the streetcar negligent as to lookout, speed, and control, and found negligence on the part of the deceased in entering on the track in front of the approaching car. On appeal this court said, page 114:

"It then becomes evident that the motorman failed to maintain a proper lookout, but it is also evident that the deceased has equally failed to perform his duty in the matter. Either he did not see the car, or seeing it he heedlessly invited disaster by hurrying in front of it."

At page 115:

"The deceased must have seen the streetcar and must have been aware that it was not stopping as he desired it to do. Placing himself in the zone of danger, if not deliberately reckless, must have been due to a belief that he could outstrip the car and reach safety across the track. Opportunity for observation existed. Negligence of the deceased was as much a cause in bringing about the collision as the conduct of the motorman."

We conclude that the inferences drawn by the jury and approved by the trial court were permissible and that they should not be disturbed.

We have examined the claim made by appellant that the conduct of defendant's counsel, by his insistence of sounding the horn at the mill and in the courtroom, in the presence of the jury, was prejudicial error, and the claimed errors of the court in its instructions to the jury. A careful examination of the record fails to sustain appellant's contentions, and no useful purpose would be served by discussing them further in this opinion.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I dissent because I think that upon the evidence stated in the opinion of the court there was no evidence that the deceased was negligent, and that he was not negligent is presumed in absence of evidence that he was. That the defendant was negligent was found by the jury, that finding was approved by the trial court, and is conceded by counsel for defendant to be supported by the evidence. It follows that the plaintiff is entitled to judgment for the damages assessed by the jury.

The principle of law applicable to negligence cases involving accident resulting in death, that the deceased is presumed to have exercised due care in absence of evidence showing to a reasonable certainty he failed to exercise it, is so well known to the legal profession as not to need citation of authorities to support it. This presumption "in itself is a very substantial presumption, and while it does not constitute affirmative evidence that due care was exercised, it does require proof to the contrary in order to remove its persuasive force." *Seligman v. Hammond,* 205 Wis. 199, 203, 236 N. W. 115. I think the evidence in the instant case does not "remove" that "persuasive force."

While without the testimony of eyewitnesses to an accident circumstances may exist that warrant a jury inference that a deceased person was guilty of negligence that contributed to his death, *Smith v. Green Bay,* 223 Wis. 427, 271 N. W. 28; *Waitkus v. Chicago & N. W. R. Co.* 204 Wis. 566, 236 N. W. 531, 237 N. W. 259, such circumstances as are in evidence in the instant case not only do not warrant such inference but to my mind they tend strongly to refute it. It is as fair an inference that because of the clatter of the two mills the deceased did not hear the horns as that he did, and if he did not hear them no inference of negligence is warranted. Also it is as fair an inference that the deceased did not know that the horns were sounded as a warning of the truck's approach as that he did, especially in view of the fact that the horns were automobile horns and the deceased, if he heard the sounds, as likely as not attributed them as coming from automobiles in the vicinity, and if he did not know they were sounded to warn of the truck's approach no inference of negligence is warranted. It is manifest that if the deceased heard the horns sounded by the defendant and knew that they were sounded as a warning of the approaching truck he either took action to get out of the way of the truck or he committed suicide. The latter cannot be inferred. Moreover, the deceased, if he was made aware of the approaching truck, was in an emergency created by negligence of the defendant, and if he took such action as he deemed likely to avoid being hit by the truck he was not negligent. It is presumed that if aware of the truck's approach he did this. And "if the facts stated [in the opinion herein] are not sufficient to justify the conclusion" of an emergency "it does place the evidence in such a state of conjecture that it cannot be determined" whether an emergency existed, and in either event the defendant, upon whom the burden of proving negligence rested to absolve it from liability, has failed to prove it. *Seligman v. Hammond, supra,* p. 204. Effect must be given to the presumption in the instant case

if the evidence is placed "in such a state of conjecture that it cannot be determined" what the deceased did or whether he heard the horn or whether he knew the horn was sounded as a warning. *Seligman v. Hammond, supra,* p. 204. Where the circumstances do not show or warrant inferences to a reasonable certainty what the deceased did, the presumption compels the conclusion that he exercised due care. *Smith v. Green Bay, supra; Witkowski v. Menasha,* 242 Wis. 151, 163, 164, 7 N. W. (2d) 612; *Guderyon v. Wisconsin Telephone Co.* 240 Wis. 215, 226, 2 N. W. (2d) 242; *Ledvina v. Ebert,* 237 Wis. 358, 367, 296 N. W. 110; *Ray v. Milwaukee Automobile Ins. Co.* 230 Wis. 323, 330, 283 N. W. 799.

In my opinion the cases above cited compel entry of judgment for the plaintiff. In every one of them the evidence was held by this court not to warrant submission to the jury of the question of the deceased's due care, and the presumption was held to require entry of judgment for the plaintiff, and in every one of them but *Smith v. Green Bay, supra,* it seems clear to me the circumstances in evidence more nearly warranted a finding of contributory negligence than do those here in evidence. I consider that not to give like effect to the presumption in the instant case deprives it of the "substantiality" declared for it in *Seligman v. Hammond, supra,* and permits findings to rest on mere conjecture instead of reasonable certainty.

As I visualize the situation from the facts stated in the opinion of the court, the deceased, after getting the data, noted on the card found on his person, relating to a railroad car on the spur track east of the defendant's mills, walked west on or alongside of the railroad track until he reached the ramp on which the truck ran that crossed the railroad track, then turned left to go around the ramp and the loaded truck came down the ramp from his rear and struck and rolled him to his death between the load of the truck and the pile of pulp so close to the truck track as not to leave clearance for his body.

I think this is the most that can rightly be held to appear from the evidence to a reasonable certainty. Whether the deceased looked to his right before turning left, whether the truck was then moving, whether the horns were then sounding, whether the defendant was then listening, whether he heard the sounds of the horns, whether if he heard them he recognized the sounds as a warning of his danger, whether if he heard the horns there was a diversion of the deceased's attention at the time, as for instance wondering where the automobiles were from which the sounds as it may have appeared to him came, the evidence does not disclose to reasonable certainty but leaves entirely to conjecture. The court apparently has applied to the crossing of the truck track by the deceased the hard and fast "stop, look, and listen" rule of law that is applied by this court to a person about to cross a railroad track, criticised in the dissenting opinion of Mr. Justice WICKHEM in *Waitkus v. Chicago & N. W. R. Co., supra,* and of which it is said in Restatement, 2 Torts, p. 770, sec. 289, comment *i:* "Such a degree of attention is notoriously foreign to the custom of travelers upon the highway, although its requirements may be justified" by other considerations; and of which it is said in comment *j,* Id.: "There may be situations in which the importance of immediate action prevents the risk of being unreasonable, as where an act is done in an emergency." The "stop, look, and listen" rule has never been applied by this court or any other that I am aware of to any sort of track but a railroad track, or to any sort of crossing but a highway crossing and it should not be extended. That the trial judge considered this rule to apply and applied it seems apparent from use of the term "narrow-gauge track" in question 5 (b) of the verdict and the instructions to the jury in connection with it: Was the deceased "negligent as to his own safety . . . with respect to the position he occupied on or near the defendant's narrow-gauge track?" Precisely the same acts of the deceased as to looking for the truck and as to the

efficiency of his sight and as to the inferences to be drawn from the nearness of the truck are declared as is required of one about to cross a railway track at a highway crossing. That the same things are not necessarily required is apparent from the statement in the *Waitkus Case, supra,* of the duty of the person killed by an approaching train, p. 570: "His duty is not to exercise the same [degree of] care that mankind generally do. His duty is to meet the standard of care required by the law,"—that is the duty that is required by the "stop, look, and listen" rule. The duty of the instant deceased was merely to use the degree of care mankind generally uses under like circumstances. At a railroad crossing the duty is to look to see whether a train is approaching. The thing imperiling safety is a moving train or engine. Here the truck that imperiled the deceased was not necessarily moving when he arrived where he could see it if he looked toward it. If it was not moving he might properly take steps that he might not properly take if it was moving. If it was not moving, the imminence of the starting of it, however near it was, might not be observable from seeing it although due care was exercised in the observation. If the imminence of the truck's starting was not observable by due care in observation, the deceased was not under duty to wait until the truck passed, as one is under duty to do in case of a moving train in dangerous proximity. The deceased cannot rightly be held to the "stop, look, and listen" rule, and without so holding him, the evidence cannot, in my opinion, rightly be held to overcome the presumption that he exercised due care.

I think also that if it be conceded that the deceased was somehow causally negligent judgment should nevertheless be entered for the plaintiff. Under the comparative-negligence statute, sec. 331.045, to entitle a defendant to escape liability on the ground of a deceased person's contributory negligence, he must prove that the deceased's negligence was greater than his own. *McGuiggan v. Hiller Brothers,* 214 Wis. 388, 253

N. W. 403; *Devine v. Bischel,* 215 Wis. 331, 335, 254 N. W. 521; *Gauthier v. Carbonneau,* 226 Wis. 527, 537, 277 N. W. 135. If the deceased was negligent, there is no evidence as to what acts of commission or omission of his constituted that negligence. Without determination of the acts of the deceased that constituted his negligence, there is no basis for comparing his negligence with that of the defendant, and no proper determination of their relative proportions. See *Devine Case, supra,* p. 335. True, the jury found that deceased was causally negligent in respect to lookout and in respect to the place he occupied on or near defendant's "narrow-gauge track." But of what did the failure of lookout consist? Was it a failure to look at all on reaching the ramp crossing the railroad track? Or was it in not observing whether the truck was moving or whether if not moving the starting of it was imminent; or was it in not observing that there was not sufficient space between the piled pulp and the loaded truck to allow the truck in passing to clear a man standing close to the pile of pulp? The evidence affords no basis for determination of these questions to a reasonable certainty, and without their such determination no basis for determination of the proportional negligence of the defendant and the deceased is established, and the defendant has failed to absolve itself from liability.

For the reasons above stated, I think judgment should be entered in favor of the plaintiff for the full amount of the damages assessed by the jury.

I am authorized to state that Mr. Justice WICKHEM and Mr. Justice MARTIN concur in this dissent.